PEOPLE v MATLOCK

Docket No. 83273. Submitted October 1, 1985, at Marquette. Decided
    July 8, 1986.

Phillip D. Matlock was convicted of first-degree criminal sexual
    conduct following a jury trial in Marquette Circuit Court,
    Edward A. Quinnell, J. Defendant appealed, arguing that he
    was denied a speedy trial and that error mandating reversal
    resulted from the trial court's permitting the victim's rape
    counselor to testify that studies had shown that ninety-five
    percent of sexually abused children tell the truth about sexual
    abuse and that the counselor, in four years of counseling of
    over one hundred rape victims, had never encountered a lying
    child. Defendant appealed. *Held:*

    1. Although the defendant asserted his right to a speedy trial
    and the delay of twenty-one months gave rise to a presumption
    of prejudice, on balance there was no denial of the right to a
    speedy trial, since only four months of that delay was unex-
    plainable and attributable to the prosecution and there was
    nothing to indicate that defendant, in fact, was prejudiced by
    the delay.

    2. The testimony by the rape counselor that she had never
    encountered among the children that she had treated a child
    who had lied about sexual abuse was impermissible vouching
    for the credibility of the complainant, since complainant was
    among those children who had been treated by the rape coun-
    selor.

    Reversed and remanded.

1. CRIMINAL LAW — SPEEDY TRIAL.

    The determination of whether a criminal defendant was denied
    his constitutional right to a speedy trial involves inquiry as to:
    (1) the length of the delay, (2) the reason for the delay, (3)

REFERENCES

Am Jur 2d, Criminal Law §§ 849 *et seq.*

Am Jur 2d, Rape § 81.

Am Jur 2d, Witnesses §§ 656 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Rape;
    Speedy Trial; Witnesses.

whether the defendant had asserted his right to a speedy trial, and (4) whether the delay resulted in prejudice to the defendant.

2. Criminal Law — Speedy Trial — Prejudice — Presumptions.

Prejudice will be assumed after an eighteen-month delay in bringing a defendant to trial; prior to that time the burden is on the accused to show that he was actually harmed; after eighteen months, the burden shifts to the prosecution to show there was no prejudice.

3. Rape — Evidence — Expert Testimony — Jury Instructions.

Expert testimony to the effect that it is normal for juvenile rape victims to delay disclosure of the criminal act can be properly admitted into evidence in a rape trial for the purpose of explaining the delay in the child's disclosure where the delay in disclosure was made an issue by the defendant, provided that the jury is properly cautioned that such testimony cannot be used to prove the existence of rape but only to explain the delay in the child's reporting of the incident.

4. Rape — Evidence — Credibility of Witnesses.

It is error mandating reversal for a rape counselor to testify at a rape trial that she had never in her experience encountered a child who had lied about being a rape victim, since such testimony constitutes an impermissible vouching for the credibility of the victim's testimony.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Judd R. Spray,* Chief Assistant Prosecuting Attorney, for the people.

*Thomas P. Casselman,* for defendant.

Before: D. F. Walsh, P.J., and Gribbs and Shepherd, JJ.

Per Curiam. Defendant was convicted by a jury of first-degree criminal sexual conduct. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). He appeals as of right. He raises several issues on appeal, including violation of his right to a speedy trial and the erroneous admission of a rape counselor's testi-

mony regarding the complainant's credibility. We find that the trial court did not err in denying defendant's motion to dismiss for lack of speedy trial, but that the admission of the rape counselor's testimony was reversible error. Thus we reverse defendant's conviction and remand for a new trial.

Defendant is the father of the complainant, Melissa Matlock, born on June 13, 1974. Defendant and Melissa's mother, Jodi Matlock, are divorced and the mother has legal custody of Melissa.

On July 8, 1982, the Department of Social Services interviewed Melissa at the request of her mother regarding possible criminal sexual conduct involving Melissa and defendant. At that time, Melissa denied any sexual conduct had taken place. On March 30, 1983, Melissa was again interviewed by DSS and the state police at the request of her mother. At that time Melissa told the interviewers that, while she was visiting the defendant in his log cabin in the summer of 1982, he put his penis into her mouth and between her legs. Based upon this information, defendant was arrested on March 31, 1983, and was charged with first-degree criminal sexual conduct. On April 1, 1983, Melissa was again interviewed and stated that in the spring of 1980 defendant put his penis between her legs and that in the summer of 1982 defendant put his penis in her mouth.

At defendant's preliminary examination on May 12, 1983, Melissa testified that defendant showed her his penis when he lived in "the red house" (a red duplex), which was sometime between December 1980 and July, 1981. She also testified that when defendant lived in the log cabin, which was from July, 1981, to sometime in 1984, he told her on two different occasions to either take off her

clothes or pull down her pants. He then put his penis between her legs on both occasions. She also testified that on one of these occasions in the log cabin he put his penis in her mouth. The prosecution was allowed to amend the information so as to charge defendant with first-degree criminal sexual conduct based upon an incident of fellatio in 1981 while defendant was living in the log cabin. This was the charge upon which defendant was tried.[1]

Defendant's trial was originally scheduled for February 7, 1984. However, on that date, defense counsel moved for an adjournment of the case because of the possibility of prejudice to defendant arising out of articles on child sexual abuse appearing in a local newspaper. The motion was granted over the prosecution's objection and trial was rescheduled for May 7, 1984.

Defendant's first trial commenced on May 7, 1984. However, the trial court granted a mistrial based upon references to similar allegations of sexual abuse concerning defendant's stepdaughter. The new trial was scheduled for June, 1984. However, trial was adjourned several days prior to that time based on the prosecution's motion to endorse Fran Waters, Melissa's rape counselor, as an expert witness. Hearings to endorse Waters as an expert witness were scheduled in July and August, 1984, but the motion was heard on August 29, 1984, and was granted by the trial court.

Trial was finally commenced on December 11, 1984, and concluded on December 13, 1984. On December 11, 1984, defendant moved to dismiss the charges on the basis that his right to a speedy

---

[1] Although Melissa's trial testimony was not included in the record presented on appeal, statements made by the trial court in the record which is before us indicate that Melissa added an additional sexual incident in her testimony at trial.

trial had been violated by the long delay between his arrest in March, 1983, and trial in December, 1984. A demand for a speedy trial had been filed nearly a year earlier in December, 1983. The motion was heard on December 12, 1984, and, after considering the length and reasons for the delay and the prejudice to the defendant, which was presumed because of the lengthy delay, the trial court denied the motion.

On appeal, defendant first contends that the twenty-one month delay between arrest and trial denied him his constitutional right to a speedy trial and that the trial court thus erred in denying his motion to dismiss on that basis. Inquiry into and the balancing of the following factors aids the determination of whether defendant was denied his constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. *People v Collins,* 388 Mich 680, 687-690; 202 NW2d 769 (1972); *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), adopting the test of *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

With respect to the first factor, the length of the delay, the over eighteen-month delay, as recognized by the trial court, is presumptively prejudicial and places on the prosecution the burden to show that no prejudice to defendant resulted from the delay. *Collins, supra,* p 695. Whether the prosecution met its burden will be addressed in our discussion of the fourth factor, prejudice to the defendant.

With respect to the reason for the delay, the delay in the instant case from February, 1984, to May, 1984, was attributable to defendant's request for an adjournment. The delay from May, 1984, to June, 1984, was attributable to defendant's motion

for and the trial court's grant of a mistrial. The delay from June, 1984, to December, 1984, was, however, attributable to the prosecution. The delay from June, 1984, to August, 1984, was associated with a need to obtain a prosecution witness and presented a "tenable reason for deferring the trial." *People v Wallace,* 33 Mich App 182, 184; 189 NW2d 861 (1971), however, the delay from September to December, 1984, was not explained, was thereby attributable to the prosecution, and thus weighs in favor of defendant's claim of a denial of his right to a speedy trial. The third factor, defendant's assertion of his right, also weighs in favor of defendant. Although defendant did not move to dismiss until trial, he did originally file a demand for a speedy trial in December, 1983, one year earlier.

In examining the final factor, prejudice to the defendant, we agree with the trial court that the prosecution met its burden of showing that defendant did not suffer prejudice as a result of the delay. Defendant contended at trial and on appeal that he was prejudiced by the delay because he had to contend with the changes in the stories related by his daughter, particularly the addition of an additional act of fellatio, and because he had to deal with the sudden decision to endorse Fran Waters some fifteen months after he had been charged with the instant offense. We characterize this assertion of prejudice as an assertion of prejudice to his defense, which is the most serious type of prejudice delaying trial. *Collins, supra,* p 694. As established at the hearing on defendant's motion to dismiss, although Melissa testified to an additional incident of oral sex with defendant at "the red house," any prejudice which might have been incurred by this change of or addition to Melissa's story was cured by the trial court's in-

struction to the jury that testimony concerning an alleged act of fellatio at the red house was not to be considered by the jury as evidence of defendant's guilt or disposition to commit similar crimes. Furthermore, with respect to the sudden endorsement of Fran Waters, Waters was endorsed as a prosecution witness nearly three and a half months prior to defendant's trial, which gave defendant ample time to prepare his defense in light of her endorsement.

On balance, we hold that defendant was not denied his right to a speedy trial. Although defendant asserted his right to a speedy trial and the delay was long enough to raise a presumption of prejudice, only part of the delay was unexplained and attributable to the prosecution, and, most importantly, we are unable to discern any prejudice attaching to the presentation of defendant's defense. Thus defendant was not entitled to a dismissal of the charge against him for lack of speedy trial, and the trial court did not err in denying his motion to dismiss on this ground.

However, defendant's next issue on appeal, the admission of Melissa's rape counselor's testimony at trial, requires reversal and remand for a new trial. At trial, defendant sought to attack Melissa's story and credibility by focusing on her initial denial of sexual abuse and her later inconsistent stories regarding the alleged sexual abuse. After a hearing on the prosecution's motion to endorse Melissa's rape counselor, Fran Waters, as an expert witness, the trial court permitted Waters to testify on the issue of whether or not it is typical for a sexually abused child to delay reporting the abuse or change his or her story concerning the incident of sexual abuse. The court further ruled that Waters could not testify specifically concerning Melissa's credibility.

Waters testified at trial that initial denial of sexual abuse was not an unusual response of a sexually abused child and that the delay in relaying the incident can confuse a child's memory as to the exact places and times of the abuse. Waters further testified that she had treated Melissa for over a one-year period. The trial court, over objection by defense counsel, questioned Waters as to studies indicating that ninety-five percent of sexually abused children tell the truth about sexual abuse and inquired as to how the children's stories were validated. During this questioning Waters testified that of the over one hundred patients (which would include Melissa) she had treated over a four-year period, she had never encountered a lying child.

In this case Waters was called upon to testify that a delay in reporting the rape is normal in such cases and this testimony was elicited from the counselor only to counteract the testimony of defendant that it was somehow abnormal for the victim to wait so long to report the incident. We conclude that this testimony could be properly considered by the jury under a cautionary instruction which prohibited the jury from using the testimony about the delay being normal in such cases to prove the existence of the rape but permitted consideration of that testimony only to explain the delay which was criticized by the defendant.

However, we find that Waters directly vouched for complainant Melissa's credibility. Waters, after having testified that Melissa was a child that she had treated, testified in response to the trial court's questioning that, out of all the patients she had seen in the past four years, she had not encountered a child that had lied to her. Thus, Waters' expert testimony that none of her child

patients, which included Melissa, had lied to her impermissibly vouched for Melissa's credibility with respect to the fact that acts of sexual abuse had taken place. We also note that on two occasions during her testimony Waters expressed her opinion that children do not lie about sexual abuse, at one time stating that it was her "personal opinion" and later stating that "I just believe." Although these may have been expressions of her personal, rather than her professional, opinion, since Waters was endorsed as an expert witness in the field of child sexual abuse, these statements, in the context of her entire testimony, gave a further stamp of legitimacy to the truth of Melissa's story. Thus we find that Fran Waters' testimony as to the truthfulness of her patients' and children's stories of sexual abuse placed an impermissible stamp of scientific legitimacy to the truth of Melissa's story and its admission requires reversal and remand for a new trial. See *People v Izzo,* 90 Mich App 727, 730; 282 NW2d 10 (1979), lv den 407 Mich 935 (1979).

Since defendant's conviction is reversed on this ground, we need not address the additional issues raised on appeal.

Reversed and remanded.