**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Donald HALLMAN, Defendant and Appellant.**

**No. 14927.**

Supreme Court of South Dakota.

Argued Jan. 14, 1986.

Decided July 9, 1986.

Sherri L. Sundem, Asst. Atty. Gen., Pierre; Mark V. Meierhenry, Atty. Gen., Pierre, on brief, for plaintiff and appellee.

James D. Taylor of Tinan, Padrnos, Smith & Taylor, Mitchell, for defendant and appellant.

TICE, Circuit Judge.

Donald Hallman (Hallman) was charged by indictment with one count of rape and one count of incest. A jury convicted Hallman on each count. He was sentenced to serve concurrent eight-year terms. Hallman appeals. We affirm.

On July 27, 1984, Hallman's thirteen-year-old sister gave birth to a stillborn child. Law enforcement immediately proceeded to investigate the Hallman family. During the investigation, the victim and her sisters stated that Hallman had sexual intercourse with the victim on many occasions. Because of this information, Hallman, a twenty-five-year-old engaged in farming, was arrested at his home at 10:45 in the evening. He was transported to the Brule County Jail in Chamberlain, South Dakota, and interviewed by DCI Special Agent Dave Muller after being advised of his rights. During the course of the inter-

rogation by Muller, Hallman denied having intercourse with the victim.

At approximately 2:00 a.m., Muller turned Hallman over to Deputy Sheriff Doug Kirkus who had spoken with the victim and her sisters earlier. Kirkus advised Hallman of his constitutional rights. After a thirty-five minute discussion at 2:50 a.m., Kirkus turned on a tape recorder. The initial discussion on the tape recorder reveals a further admonition to Hallman of his constitutional rights. During the course of the interview Hallman acknowledged that he had sexual intercourse with the victim.

At the suppression hearing Kirkus and Muller stated that Hallman appeared alert and did not complain about lack of sleep or food. Kirkus did acknowledge that when he first saw Hallman, he appeared to have recently awakened from a sleep. At no time during the course of the interviews did Hallman affirmatively indicate a desire not to speak. At no time during questioning does it appear that Hallman requested an attorney. He did testify at trial, however, that when he did request an attorney the interview was terminated.

Hallman, at the suppression hearing, did not testify that any request was ever made for an attorney. Hallman alleged that before the tape was turned on Kirkus told him that he would not see his sisters again, that they would go to jail, or he would spend fifteen years in the pen. Kirkus denied making any threats or conversation of this nature. Kirkus and Muller only promised that it would go easier on Hallman if he would cooperate with them. Kirkus and Muller did offer to find Hallman some help if he would cooperate with them.

By motion filed on October 17, 1984, Hallman requested the assistance of psychiatric or psychological experts. The motion was not accompanied by an affidavit nor did it allege any underlying factual basis for such an appointment. The motion simply stated that Hallman intended to raise issues concerning the possible psychological transference of sexual activity with one member of the family to another, the effects of radical change in living arrangements on the alleged testimony, and the veracity of the alleged victim's testimony. Hallman stated in his motion that an expert's assistance was necessary for preparation of an adequate defense, particularly in light of the many psychological and social issues likely to be raised.

Prior to the motion being made, a dependent/neglect action was brought on behalf of the female children of the family, including the victim. The children's lawyer in the dependent/neglect action asked for the appointment of a psychologist to evaluate and treat the children. Pursuant to that request, the court appointed Dr. McGraff. In addition to Dr. McGraff, Dr. Bloom was also working with the children. The record is silent as to when Dr. Bloom commenced work with the children. It is evident, however, that he spent time with them prior to the trial in this matter.

At the suppression hearing on October 17, 1984, the court deferred a decision on Hallman's request for a court appointed expert and advised counsel that all reports must be made equally available to the state and Hallman. There is no indication in the record that the doctors were any less available to Hallman than to the state. The record does not indicate that the doctors were employed by or sought by the prosecution in any fashion.

The trial began on February 11, 1985. On that date, the judge signed an order denying the expert requested by Hallman. The record is silent as to any other proceedings concerning the expert appointment.

The state called the victim to testify at trial. The victim denied any sexual intercourse with Hallman. The state then sought to call Dr. McGraff and Dr. Bloom. The ostensible purpose of the testimony was to impeach the victim's denial of sexual intercourse. While there was much discussion concerning the introduction of the doctors' testimony to establish prior inconsistent statements, in fact, the testimony of the doctors contains no reference to prior inconsistent statements of the victim.

Pursuant to a request by Hallman, the judge instructed the jury to consider the doctors' testimony for the purposes of impeachment, not as substantive evidence. Hallman's primary objection was that it was unfair for the state to present evidence of an expert nature concerning the dynamics of a child incest victim without providing Hallman the opportunity to have his own expert retained to counteract this type of testimony.

Although Hallman, throughout the course of the trial expressed objections based upon the lack of access to an expert, the original motion for an expert filed October 17, 1984, was never renewed nor was there any additional factual basis submitted by Hallman for the use of such an expert.

### ISSUE I

WHETHER HALLMAN WAS DENIED A FAIR TRIAL BECAUSE OF THE COURT'S FAILURE TO APPOINT AN EXPERT IN THE DYNAMICS OF AN INCEST SITUATION.

Hallman is clearly indigent and has received the benefit of court appointed counsel. Under such circumstances this court has established the guidelines for the appointment of experts to be paid for by the county. In *State v. Sahlie*, 90 S.D. 682, 690, 245 N.W.2d 476, 480 (1976), we said,

> Initially, the request must be made in good faith. The request must be reasonable in all respects. The request must be timely and must set forth specific reasons which seem to make such services needed or necessary to the defendant. The request must specify that the defendant is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained were the defendant financially able.

However, that appointment should not be made if the Court finds that the request is "frivolous, unreasonable, unnecessary for an adequate defense, or without underlying factual support[.] ..." *Sahlie*, 90 S.D. at 691, 245 N.W.2d at 480.

■ We readily recognize that in a case involving an offense such as incest there may be serious psychological implications; the trier of fact should be made aware of the psychological status of the victim. Indeed, where the victim recants previous testimony, it may become highly probative. This area of consideration is within the trial judge's sound discretion. The trial judge is in a better position than we to judge the nature and necessity of the appointment of an expert in a given factual environment. *State v. Logue*, 372 N.W.2d 151 (S.D.1985).

■ In this case, the motion was made prior to any knowledge that the victim would recant her prior testimony. Further, Hallman did not articulate any facts which would support his request for a court appointed expert. Merely making a generalized request without a factual basis therefor is insufficient to establish the right of a defendant to a court appointed expert. *Sahlie, supra.*

More particularly, at the time the motion was made, the state had not hired experts to assist it in this area. There was no reason to believe that the state anticipated utilizing any expert testimony in this area, and there were already two doctors with expertise who were equally available to the state and Hallman. The mere fact that the state chose to call those witnesses at trial does not make them any more the state's witnesses prior to the trial than Hallman's. Those witnesses were clearly dedicated to the needs of the children and not "hired guns" of the state or solicited by the state to assist the state in its prosecution of this case.

In cases of this nature, the court should consider the appointment of an expert to insure that all necessary information is available. However, in this case we find no fault with the trial court denying Hallman's request for an expert. There was no significant reason to believe that the expert would be necessary for an adequate defense in this case, and no reason to believe that the state would call experts to testify about the victim's psychological status and

the trauma and psychology surrounding a victim of incest. Until the victim recanted her prior statements, this testimony could not reasonably be anticipated.

We recognize that this created a "Catch–22" for Hallman. He did not know that an expert would be needed until after the victim recanted her statements. He, nonetheless, was obligated to articulate a basis supporting the court's appointment. Without that basis the trial court could not proceed to appoint such an expert. In any event, this is an area of sound discretion for the trial judge, and this court will not tamper with that judgment, save in its abuse. *Logue, supra; State v. McCafferty,* 356 N.W.2d 159 (S.D.1984).

We noted in *McCafferty* that the defendant has the obligation of showing substantial need before expert examination of a victim is warranted. Hallman failed to make such a showing. Hallman's request was imprecise and in the nature of a fishing expedition. We criticized such tactics in *State v. Wounded Head,* 305 N.W.2d 677 (S.D.1981). Trial courts should, however, scrutinize a defense request for an expert in order to insure that an indigent defendant may procure any reasonable defense or information necessary to a reasonable defense. In balancing the reasonableness of the appointment, the trial court should, when in doubt, lean toward the appointment of an expert. *Sahlie, supra.*

We recognize that it is sometimes difficult to articulate the unique factual basis needed for a generalized defense. Where the state has an expert, that alone is not sufficient to warrant the appointment of an expert for the defense. The defense must establish an articulable basis for believing that the state's expert will present evidence which could reasonably be contradicted by other experts in the field. *See generally, Wounded Head, supra; Sahlie, supra.*

Where there is a reasonable expectation that the state will be using psychological testimony at the trial, the trial court should accord considerable weight to whether the defendant would have a need to prepare psychological evidence to refute the state's assertions. *Sahlie, supra.* The defendant, however, before an expert could be appointed, would need to establish that basis by affidavit. The trial court's decision on such appointment, even where the state does anticipate presenting psychological testimony, is only reversible if there is a clear showing of abuse of that discretion. *Logue, supra.*

## ISSUES II AND III

### FAILURE TO APPOINT AN EXPERT FOR THE PURPOSES OF BAIL AND SENTENCING.

Hallman alleges that he was deprived of the assistance of an expert for the purposes of bail pending appeal and sentencing. This again, is a matter within the discretion of the trial courts. Because Hallman did not make any post-trial request for an expert, this matter is not reasonably before us. *Sahlie, supra.*

Although the trial court's failure to appoint an expert under the circumstances of this case would not constitute error, courts should, in cases where the psychological makeup of the defendant is crucial to determining the appropriate sentence, weigh heavily the need for such information before it denies its access to the defendant. To not provide appropriate therapy for a nonfixated defendant is as potentially detrimental to society as allowing a fixated defendant to be released upon society.

## ISSUE IV

### VOLUNTARINESS OF CONFESSION

In evaluating the voluntariness of a confession, the court must consider the totality of the circumstances viewing the evidence presented at the suppression hearing in a light most favorable to the state. *State v. Bult,* 351 N.W.2d 731 (S.D.1984). Unless we find the decision of the trial court to be clearly erroneous, that decision should be affirmed. *Bult, supra.*

■ Under the circumstances of this case we are troubled at the extensive questioning of Hallman from 10:30 at night until 3:00 in the morning. There is substantial evidence, however, that Hallman displayed few signs of weariness, never complained or expressed discomfort, and never indicated a wish or desire to terminate the interrogation.

The officers on three occasions advised Hallman of his constitutional rights concerning self-incrimination and counsel. It is evident in the transcript of Hallman's confession that Kirkus conducted himself professionally and courteously. Kirkus provided Hallman the opportunity to change his statements, express any complaints or discomfort he may have had concerning the interview, or relate any threats that may have occurred. While the interview may be characterized as pressing, encouraging, or persistent, Hallman was not in any manner coerced into making a confession.

### ISSUE V

### IMPERMISSIBLE IMPEACHMENT

Hallman contends the state should not have been allowed to present the doctors' testimony because it was impermissible impeachment.

■ Hallman claims it was prejudicial for the state to call the doctors to testify concerning the dynamics behind incest and about the victim herself, since Hallman did not have the opportunity to obtain a court appointed expert in this area. As we earlier stated, these experts were no less available to Hallman than to the state. Thus, there was no prejudice in permitting their testimony.

Hallman also alleges that the doctors' testimony is extrinsic evidence of a prior inconsistent statement which should not have been allowed under SDCL 19–14–25. The doctors' testimony does not fall under the scope of that rule, but rather, is explanatory of the psychological environment under which a significant witness's testimony can be better understood by the jury.

The judgment of conviction and sentence imposed is affirmed.

FOSHEIM, C.J., MORGAN, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs specially.

TICE, Circuit Judge, sitting for WUEST, J., disqualified.

SABERS, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (specially concurring).

I specially concur as I am compelled, by responsibility and law arising in this case, to address testimony of experts (psychologists) pertaining to "the dynamics behind incest."

A young girl here denied, under oath, ever having had sexual intercourse with the defendant. She admitted that she had made certain statements to psychologists, law enforcement officers and social workers implicating her brother, the defendant, in incest. During trial, she testified that she made these implicating statements to stop the further questions and pressure upon her. At trial, she stated under oath that these statements were untrue.

These two psychologists testified as to the dynamics in families wherein incest takes place. This type of testimony is permissible; however, it cannot overreach so as to permit a qualified expert to suggest that the victim or the complainant was raped or engaged in forbidden sexual intercourse. Needless to say, the expert cannot testify on the ultimate question of guilt or innocence by stating "yes, the victim did engage in intercourse or she did not." This is the function of the jury. If we jettison the principle that the jury decides the guilt or innocence of the defendant, and turn it over to experts, we forsake the lifeboat which has saved many innocent men. *See* *State v. Logue,* 372 N.W.2d 151, 157 (S.D. 1985).

A case which reveals the general rule for admission in the dynamics of cases akin to the case before us is *People v. Roscoe,* 168 Cal.App.3d 1093, 215 Cal.Rptr. 45 (1985). It is as recent as June 4, 1985. There, a psychologist testified and gave his diagnosis of the complaining witness as a victim of child molestation. The California court held that it was error but affirmed the judgment upon the basis that it was not reasonably probable that exclusion of the evidence would have resulted in a different verdict.

What I am driving at is this: Incest victims or rape trauma victims cannot be singled out, specifically, in a given factual scenario, by professional experts as having had a crime perpetrated upon them. The dynamics involved in a like crime may be testified to by experts but for certain limited purposes. Such a purpose would be to support that a class of victims typically make poor witnesses and are reluctant to disclose sordid episodes. Another example would be to permit a professional expert to reveal to the jury that professional research reveals certain findings on the subject of *a* victim's reaction to sexual assault, given to rehabilitate the complaining witness. *People v. Bledsoe,* 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984).

I can specially concur in this case without condoning trials by experts based upon these rationales as gleaned from the record. (1) The psychologists never testified that the victim told them she was raped. (2) The psychologists never testified that in their opinion she was raped. (3) The psychologists' most objectionable statements can reasonably be read not to go to the the substance of the crime. (4) The defendant failed to object on the basis that the psychologists were testifying to the substance of the crime. (5) The defendant objected to the psychologists testifying because he, the defendant, was not appointed an expert of his own. (6) The jury was instructed that such testimony was for impeachment purposes and was not substantive evidence.