Bruce McCAFFERTY, Petitioner
and Appellee,

v.

Herman SOLEM, Warden, South Dakota
State Penitentiary, Respondent
and Appellant.

Nos. 16121, 16137.

Supreme Court of South Dakota.

Considered on Briefs Aug. 29, 1988.

Reassigned July 26, 1989.

Decided Dec. 13, 1989.

Rehearing Denied Jan. 3, 1990.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for petitioner and appellee.

Mark L. Bratt, Asst. Atty. Gen., Pierre, for respondent and appellant; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

MORGAN, Justice (on reassignment).

This appeal arises from a decision on the habeas corpus petition of Bruce McCafferty (McCafferty) challenging the constitutionality of his conviction for a sexual contact offense. This court affirmed that conviction on direct appeal. *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984) (*McCafferty I*). From the determination of the court below (habeas court) that certain testimony should not have been admitted, State appeals. By notice of review McCaf-

ferty appeals, claiming that the habeas court erred in its ruling on certain other procedural errors at trial. We reverse the decision of the habeas court on the admission of the testimony but affirm on the issues raised by McCafferty's notice of review.

The facts of this case are stated in *McCafferty I.* He was convicted on the charge that he knowingly engaged in sexual contact with another person under fifteen years of age, in violation of SDCL 22–22–7.[1] He was also found to be a habitual offender under SDCL 22–7–8. The trial court sentenced McCafferty to fifteen years in the South Dakota Penitentiary. McCafferty appealed his conviction to this court, where the trial court's decision was affirmed in part and remanded with instructions to the trial court to determine whether the victim's out-of-court statements had sufficient "indicia of reliability." *McCafferty I, supra.* On remand, the trial court found that the hearsay statements bore sufficient indicia of reliability to be admissible under SDCL 19–16–35. McCafferty appealed for the second time, *McCafferty II,* and this court summarily affirmed the trial court. *State v. McCafferty,* 384 N.W.2d 323 (1986). The United States Supreme Court denied McCafferty's petition for writ of certiorari. *McCafferty v. South Dakota,* 476 U.S. 1172, 106 S.Ct. 2897, 90 L.Ed.2d 983 (1986).

McCafferty initiated this habeas corpus action against Herman Solem (State), Warden of the South Dakota State Penitentiary. The habeas court granted McCafferty's petition for writ of habeas corpus on the grounds that his conviction was based on the erroneously admitted testimony of two expert witnesses who offered expert testimony on the believability or credibility of the victim. However, the habeas court denied McCafferty's petition to the extent that his convictions were based on the allegedly erroneous admission at the trial of

evidence of his prior felony convictions and the trial court's refusal to appoint a psychiatrist or psychologist to examine the victim.

State appeals only that part of the judgment relating to the admissibility of the experts' testimony on the believability of the victim, stating the issue: whether it is error for an expert witness to give an opinion regarding the believability of a child sexual abuse victim "unavailable" at trial. McCafferty notices for review that part of the judgment relating to the admission of his prior convictions and the trial court's refusal to appoint a psychiatrist to examine the victim.[2] He grounds his issues as constitutional violations thusly: (1) whether the refusal of the trial court to appoint a psychiatrist to assist the defense violated McCafferty's right to a fair trial and his due process rights; and (2) whether the admission of McCafferty's prior felony convictions deprived him of due process.

■ The remedy of post-conviction habeas corpus is restricted by the provisions of SDCL 21–27–16 and the prior decisions of this court. The statutory provisions were fairly well summarized in our decision, *State v. Erickson,* 80 S.D. 639, 129 N.W.2d 712 (1964), wherein we pointed out that, since the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. As we said: "habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.,* 80 S.D. at 645, 129 N.W.2d at 715. *See also Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987). Habeas corpus is not a proper remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. *Id.* 406 N.W.2d at 143; SDCL 21–27–16. For pur-

1. Subsequent to McCafferty's conviction, SDCL 22–22–7 was amended by the 1984 Legislature to read: "Any person ... who knowingly engages in sexual contact with another person ... under the age of *sixteen* years is guilty of a Class 4 felony." (Amendment underlined.)

2. Both notice of review issues were raised and affirmed on direct appeal in *McCafferty I,* 356 N.W.2d 159 (S.D.1984).

poses of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. *Goodroad,* 406 N.W.2d at 143; *Podoll v. Solem,* 408 N.W.2d 759 (S.D.1987). Therefore, if McCafferty can show in a habeas corpus action that his conviction has been obtained in violation of the constitution, he is entitled to relief. Further, we may not upset the habeas court's findings unless they are clearly erroneous. SDCL 15-6-52(a); *Satter v. Solem,* 422 N.W.2d 425 (S.D.1988).

We first address the issue raised by State on the admissibility of the experts' testimony in the form of an opinion as to the believability of a victim of child sexual abuse. This specific issue has not been previously addressed by this court.

In this case, the testimony of the witnesses presently under attack was:

Pam Haugland, a preschool teacher, who testified as follows:

Q Would you say you had established some rapport with [S.F.]?

A Yes, very much.

Q Has she on other occasions opened up to you?

A Oh, yes.

Q Did you feel that you could rely on what she told you or believe what she told you?

A Definitely.

. . . .

Q Did you ask her anything else, Mrs. Haugland, or pursue this any further?

A Oh, we talked a lot and talked about different, that kind of thing, and the touching and feeling game. And I just at this point felt I better find out if there'd been any penetration, or anything of this nature. And I asked her if Daddy ever put anything in her. And she was very honest, "No. Just kleenex." [3] And I truly don't know what [S.F.] meant about that. Then she stopped talking pretty much about that. Very honest.

Dr. Curran, a clinical psychologist, testified as follows:

Q Have you ever had any trouble with [S.F.] in the past telling you things that were not true?

A No, I can't say that I have.

Q You think you can tell when kids are trying to pull the wool over your eyes?

A Not always. I think kids are pretty good. One area, you know, based on the psychological research, is that in areas of child sexual abuse, it would be less than one percent of the population lie about that. And it would take a pretty sophisticated cognitive system to create that. And I don't think [S.F.] has that kind of system functioning yet that she could create that.

Because of the special circumstances in child sexual abuse cases, several evidentiary rules have developed. Testimony relating to the child's statements concerning sexual contact are admissible if the court finds sufficient indicia of reliability. *Matter of C.L.,* 397 N.W.2d 81 (S.D.1986); *McCafferty I, supra;* SDCL 19-16-38. An expert may testify as to certain characteristics of sexually abused children and may even compare those characteristics to actions of a particular victim. *United States v. Saint Pierre,* 812 F.2d 417 (8th Cir.1987).

■ The general rule, however, is that one witness may not testify as to another witness' credibility or truth-telling capacity because such testimony would invade the exclusive province of the jury to determine the credibility of a witness. Of recent years, the impact of allowing this type of testimony in child sexual abuse cases has been considered, coupled with the general rule. "[E]xpert testimony particularly courts the danger of undue prejudice or of confusing the issues or misleading the jury because of its aura of special reliability and trustworthiness." *State v. Logue,* 372 N.W.2d 151, 157 (1985) (citation omitted). Thus, some courts have held that permit-

---

**3.** In a statement to police, McCafferty had admitted that "he may have inserted [his] finger into her vagina[.]" *McCafferty I,* 356 N.W.2d at 165.

ting an expert to give her opinion that the victim is telling the truth, puts an impermissible stamp of believability to that testimony. *United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986); *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Myers*, 382 N.W.2d 91 (Iowa 1986); *People v. Matlock*, 153 Mich.App. 171, 395 N.W.2d 274 (1986); *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (Penn.1986).

These cases were not, however, bright-line tests. They emerged slowly and haltingly out of the problems surrounding the prosecution of child sexual abuse cases. Over the past decade, courts have struggled with how far to allow experts to go in explaining whether children generally lie about sexual abuse, while attempting to protect the rights of the defendant. *See* Hutton, Child Sexual Abuse Cases: Reestablishing the Balance Within the Adversary System, 20 Univ. of Mich.J.L.Ref. 491, 498–501 (1987). At the time of McCafferty's trial, courts were permitting experts to express their opinions as to the believability of children because these cases were recognized as being "different." *State v. Kim*, 64 Haw. 598, 602, 645 P.2d 1330, 1334 (1982); *State v. Myers*, 359 N.W.2d 604 (Minn.1984).

In *McCafferty I*, we recognized that cases involving very young sexual abuse victims are special cases for confrontation clause purposes and that the legislature had adopted a "tender years" exception to the hearsay rule for just such cases. Indeed, we seem to have stated empirically that "a young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of his or her experience." 356 N.W.2d at 164. The fact that in 1989 we hold that a trial court erred in admitting Haugland's and Curran's testimony as to truthfulness, does not mean we must require that prescience of a trial judge sitting in 1983.

Following the lead of the United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), this court has long recognized that emerging constitutional rights need not be applied retrospectively in criminal cases.

*State v. Iverson*, 269 N.W.2d 390 (S.D. 1978) (ruling on granting of suspended sentences not applied retrospectively); *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974) (*Boykin* rights applied only prospectively in misdemeanor hearings); *Locke v. Erickson*, 85 S.D. 262, 181 N.W.2d 100 (1970) (right to counsel at preliminary hearing not applied retrospectively); *State v. Thwing*, 84 S.D. 391, 172 N.W.2d 277 (1969) (*Miranda* rights not applied retrospectively).

In *State v. One 1966 Pontiac Auto*, 270 N.W.2d 362 (S.D.1978), we established the following criteria to determine whether a particular decision should be given retrospective effect: "(1) The purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice." *Id.* at 365.

Applying those criteria to the facts at hand, we believe it is ill-advised to retrospectively apply 1985–plus cases on expert testimony to a trial that occurred in 1983.

First, as was noted earlier, the purpose of cases such as *Azure, supra,* was to clarify how far an expert could comment on a child witness' truthfulness. These are not cases where courts are attempting to deter prosecutorial overreaching. Rather, they are attempts to refine due process rights, while at the same time deal with the difficulties involved with inarticulate and often terrified victims of child sexual abuse. We cannot say that any legitimate purpose would be served by imposing this refinement of an evidentiary rule retrospectively.

Second, the trial judge had precedent to rely on saying that Haugland's and Curran's testimony was admissible. *Kim, supra; Myers, supra.* Our guidance in *McCafferty I* seemed to say that children could not fabricate a graphic account of sexual abuse. To claim now that a trial judge sitting in 1983 should have seen this shift in the law is ridiculous. This trial judge, and many others, relied on valid precedent to admit this type of expert testimony. We believe it would be folly to retrospectively overturn those rulings.

■ Third, applying this evidentiary ruling retrospectively would have disastrous effects on the criminal justice system. It would invite every child molester, whose trial included expert testimony about the truthfulness of the victim, to demand that his conviction be likewise overturned. There comes a point where the justice system and society has a right to consider that a conviction fairly obtained is final. In this case, we are satisfied that victim's statement, along with McCafferty's admission to the police, established his guilt and that his conviction was fairly obtained under the evidentiary rules in place at the time of his trial.

We next examine McCafferty's issues on notice of review: whether he was deprived of a fair trial and due process when the trial court denied his motion for the appointment of a psychiatrist to aid in his defense and when the trial court admitted evidence of a prior felony conviction. Both of these issues were raised on direct appeal, although without the constitutional trappings.

> 'This court will not permit an accused to appeal his judgment of conviction and speculate upon his chances of securing a reversal and then, after the judgment of conviction is affirmed, come into court in a habeas corpus proceeding and raise the same issue on other grounds which might entitle the petitioner to a new trial or his release from custody.'

*State v. Jameson*, 80 S.D. 362, 370, 123 N.W.2d 654, 658 (1963) (citation omitted). Granted, McCafferty now attempts to raise these issues to a constitutional standing, but "[m]ere assertions of denial of constitutional rights do not entitle a party to relief unless found to be true upon adequate proof submitted at the hearing." *State v. Roth*, 84 S.D. 44, 46, 166 N.W.2d 564, 565 (1969).

■ With regard to the first issue, failure to appoint a psychiatrist, we considered that issue under our prior decision in *State v. Wounded Head*, 305 N.W.2d 677, 679

(S.D.1981), wherein we held that the psychiatric examinations of complaining witnesses in sexual offense cases may be ordered at the trial court's discretion upon a substantial showing of need and justification. That has continued to be our rule. *State v. Carlson*, 392 N.W.2d 89 (S.D.1986); *State v. Hallman*, 391 N.W.2d 191 (S.D.1986). Nor are we persuaded to change it. The authority cited by McCafferty, *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), is clearly distinguishable, inasmuch as *Ake* dealt with the failure of a trial court to appoint a psychiatrist to assist the defense in interposing an insanity defense where the defendant had shown that his sanity was likely to be a significant factor at trial. McCafferty made no attempt to plead an insanity defense.

Likewise, we find *Little v. Armontrout*, 835 F.2d 1240 (8th Cir.1987), unpersuasive. We read *Little* to deal with hypnosis, a very special field of psychiatry, not present in this case. In *Little* a rape victim, while under hypnosis, had identified the defendant as her assailant. The Eighth Circuit en banc decision in *Little* did not suggest that the only criteria in deciding the necessity of appointment of a psychiatric expert was the balancing of the defendant's interest in avoiding a prison term against the state's interest in avoiding the relatively small expenditure that would be required, as McCafferty's brief suggests. Rather the court said:

> *Ake* and *Caldwell*[4] taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather the defendant must show a reasonable probability that an expert would aid in his defense and that denial of expert assistance would result in an unfair trial.

835 F.2d at 1244.

In *McCafferty I*, we determined that "McCafferty has not made a substantial showing of need and justification nor asserted that [victim] has mental or moral

---

**4.** *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (question of obligation to appoint a non-psychiatric expert for

indigent defendant; bald assertion of need for aid with no showing of reasonableness of the request).

delusions or tendencies which distort her credibility." 356 N.W.2d at 167. The record from *McCafferty I* shows that his trial counsel argued that S.F. should be examined by a defense psychiatrist because of her young age, seven, her alleged inconsistent accounts of whether McCafferty committed the crime, and the *possibility* that Dr. Curran's treatment of the mother and S.F. might cloud her judgment. What McCafferty's counsel failed to substantiate for the trial court is critical. There was no showing that Dr. Curran was biased or that her opinions were inaccurate. More importantly, though McCafferty's counsel had contacted another psychiatrist, there was absolutely no showing that he would provide a different conclusion than Curran's or that her conclusions were wrong. There was simply no showing of a reasonable probability that McCafferty's expert would aid in the defense or that denial of the expert would result in an unfair trial. McCafferty's counsel was never able to raise his request for an expert witness above his personal speculation that another expert was needed and could assist the defense.

We think that the rule established by our decisions adequately fulfills the due process requirements as set out in *Little, supra,* and we affirm the habeas court on the decision on that issue.

■ Finally, with regard to the second issue on notice of review, the admission of testimony regarding McCafferty's prior felony record, we again note that we considered that issue in *McCafferty I.* In this appeal, McCafferty concedes that the due process guarantee of fundamental fairness is not violated by admission of evidence of a defendant's prior convictions unless the potential for prejudice outweighs its probative value, citing us to *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). SDCL 19–14–12 (Rule 609(a)), sets out the same criteria plus the requirement that the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement, regardless of the punishment. Our decisions have consistently followed this requirement. *State v. Swallow,* 405 N.W.2d 29 (S.D.1987); *State v. Cross,* 390 N.W.2d 564 (S.D.1986); *State v. Cochrun,* 328 N.W.2d 271 (S.D.1983).

In *McCafferty I,* we determined that, because defense counsel had failed to renew his suppression motions at the proper times, the trial court had failed to make a ruling on the record on the motion to suppress and we remanded that issue to the trial court for further proceedings. The trial court's findings of fact and conclusions of law evidencing the weighing process in favor of admission of the evidence resulted in the second judgment that was summarily affirmed.

McCafferty's sole argument on this appeal is that the admission of evidence reflecting unfavorably on McCafferty's credibility was too unfairly prejudicial because of the admission of the expert testimony supporting the victim's credibility. As in the discussion of the first issue, on the admissibility of the expert testimony, we must view the issue in the context of the law as it existed at the time of the trial. Our rule on admissibility is at least as stringent as the federal requirements for due process. From this prospective, we cannot say that the trial court was in error in admitting the prior felony evidence for the purpose of impeachment. We affirm the habeas court on that issue.

We affirm the habeas court on the notice of review issues and reverse on the issue of admissibility of testimony and remand with instructions to quash the writ of habeas corpus.

WUEST, C.J., and MILLER, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

We have before us a basic question, not novel to appellate courts of this land, regarding the subject "Behavioral Science Testimony". Basically, we are confronted with this question: Should this state permit, in its courtrooms, behavioral science testimony that a particular child told the

truth about being sexually abused? Relatedly, we further must impliedly rule on this question: Should behavioral science testimony be admitted to show that sexually abused children as a class, do generally tell the truth about sexual abuse?

I respectfully dissent to the decision written by Morgan, J., for the reason that it deprives a defendant, accused of sexual abuse, of a fair jury trial. Therefore, I would affirm the decision of Judge Hertz, the trial judge in this criminal action. Admitting the testimony of Dr. Curran, the clinical psychologist (also a nun) and Mrs. Haugland, a teacher, deprived McCafferty of not only a fair trial but also due process. Fundamental fairness was violated here by evidentiary error. If such a violation is "material in the sense of a crucial, critical, highly significant factor", then a constitutional transgression has been established. *Collins v. Francis*, 728 F.2d 1322, 1336–37 (11th Cir.1984), reh'g. and reh'g. en banc den., 734 F.2d 1481, *cert. den.*, 469 U.S. 1143, 105 S.Ct. 826, 83 L.Ed.2d 818 (1984). We apply this same standard in habeas corpus relief requests. *Machin v. Wainwright*, 758 F.2d 1431, 1434 (11th Cir.1985). This is a habeas corpus proceeding. Our scope of review in habeas corpus proceedings is limited. *State v. Erickson*, 80 S.D. 639, 129 N.W.2d 712 (1964). There is, in my opinion, great danger in opening habeas corpus proceedings to all types of evidentiary error found in the record during the trial. However, when the error is so substantial and so great that it becomes a "crucial" and "critical" and "highly significant factor" then we must address the question: Did the accused have a fundamentally fair jury trial? Obviously, Judge Hertz did not think so. Justice Sabers does not think so. Neither do I. Under *Erickson*, 129 N.W.2d at 715, we may review "... whether an incarcerated defendant has been deprived of basic constitutional rights."

On September 13, 1989, this Court filed its opinion in *State of South Dakota v. Bachman*, 446 N.W.2d 271 (S.D.1989). There, this Court adopted the general thesis of the propriety of testimony, during trial, by "experts" on "rape trauma syndrome". In said *Bachman* decision, this special writer dissented setting forth numerous authorities against the academic premise of the majority opinion written by Miller, J. Chief Justice Wuest and Morgan, J., concurred in *Bachman* and Sabers, J., wrote specially to dissent and concluded by joining this special writer's dissent. Without waxing in depth into the dissent of either myself or Justice Sabers, suffice it to say that both of us agreed with the language of *State v. Logue*, 372 N.W.2d 151 (S.D.1985), written by Chief Justice Wuest, which holding was seriously eroded in *Bachman*. The same three justices now joining in this decision are the three justices who constituted the majority in the *Bachman* decision. I feared the movement of this Court, in the direction that it now walks, as reflected by my special concurrence in *State v. Hallman*, 391 N.W.2d 191, 196–7 (S.D.1986). I feared opening the door to testimony which would permit, in effect, hearsay/expert testimony to impale a defendant with a conclusion that "he did it"—in effect. Justice Sabers, in his dissent in *Bachman*, specifically pointed out that the testimony therein "was also offered to establish credibility". Have experts, in the field of behavioral science, now taken over the role of jury trials, in South Dakota via *Bachman*, and now this decision? The answer is: Yes.

I voted for *Logue;* I believed in its language and its spirit. I now see its holding shattered.

In *Bastow v. General Motors Corp.*, 844 F.2d 506 (8th Cir.1988), that court, at 511, quoted with approval language in *United States v. Barnard*, 490 F.2d 907, 912–13 (9th Cir.1973), *cert. den.*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974) wherein the 9th Circuit held:

Credibility ... is for the jury—the jury is the lie detector in the courtroom.... It is now suggested that psychiatrists and psychologists have more [expertise in weighing the veracity of a witness] than either judges or juries, and that their opinions can be of value in determining [credibility]. Perhaps. The effect of receiving such testimony, however, may

cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter.

This was also the message in *United States v. Azure*, 801 F.2d at 340. If we are going to do away with jury trials and substitute experts, have we not abolished the most precious right that any citizen possesses via the United States Constitution or the State Constitution by which that citizen enjoys his or her liberty as a free person? "The credibility of witnesses and weighing the evidence is for the jury." *State v. Myers*, 88 S.D. 378, 381, 220 N.W.2d 535, 537 (1974). Such a rule is hornbook law. This old rule is quoted with approval in *Azure*, cited above, which further quotes with approval, *United States v. Rosenberg*, 108 F.Supp. 798, 806 (S.D.N.Y.1952), affir'd., 200 F.2d 666 (2nd Cir.1952). What does this decision do to this law of evidence so firmly entrenched in our federal and state courts?! Dr. Curran testified to the truthfulness of S.F. Question: Did you feel that you could rely on what she told you and believe what she told you? Answer: Definitely. Later on, Dr. Curran testified "and she was very honest, ...". This testimony from a nun had to have a great impact on the jury. Its probative value was far outweighed by the danger of unfair prejudicial effect on the defendant's case. A balancing is required under SDCL 19–12–3. *State v. Dokken*, 385 N.W.2d 493 (S.D.1986). The nun's testimony placed an impermissible stamp of believability in the word of the child. This testimony absolutely destroyed the jury's right to judge the credibility of a witness. *See, State v. Thomas*, 381 N.W.2d 232, Supreme Court of South Dakota, 1986, for a decision upholding the trial court which refused to admit a social worker's written report containing an opinion of the victim's previous disposition of (a) telling the truth or (b) lying. I still support that decision. Here, the jury necessarily had to conclude that McCafferty was lying about alleged sexual abuse and was therefore guilty. We must remember that the child did not testify during this trial. Therefore, the jury was never given an opportunity to judge the credibility of the child. Surely, the jury was not going to judge adversely the credibility and opinion of a nun. Cleverly, and to imbue the nun's testimony with great and unassailable integrity, she was questioned and answered that she was a sister in the Sacred Heart Convent. Thus, the unfair prejudice outweighed the probative value, *Dokken*. In *Logue*, at 157, we quoted *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973) with approval: "Expert testimony particularly courts the [danger of undue prejudice or of confusing the issues or misleading the jury] because of its aura of special reliability and trustworthiness." Dr. Curran testified that based upon psychological research—less than one percent of children lie about sexual abuse. The coup de grace was: The trial judge instructed the jury on expert testimony; obviously, Dr. Curran was qualified as an expert. A final layer of error: Mrs. Haugland testified that she could believe what "S" (the victim) told her and that "S" was *very honest.* (emphasis supplied mine).

It appears to me that there is a diversity of appellate opinion of expert testimony on child sexual abuse. However, courts nearly approach unanimity when they are called upon to approve of expert testimony on credibility. Most of the courts, in fact a great majority thereof, reject the testimony of these behavioral science experts when they testify directly on the credibility of individual children. These are some of my authorities: *People v. Ross*, 745 P.2d 277, 278 (Col.Ct.App.1987); *People v. Oliver*, 745 P.2d 222, 225 (Col.1987); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986). Accord: *Head v. State*, 519 N.E.2d 151 (Ind.1988). In our sister state of Iowa, in 1986, in *State v. Brotherton*, 384 N.W.2d 375, 378, it was held that testimony that a young child could not fantasize concerning a sexual act was improper indirect testimony concerning the child's credibility. For other jurisdictions, supporting the dissents of Justice Sabers and this writer, in point, *see: State v. Jackson*, 239 Kan. 463, 721 P.2d 232, 238 (1986); *People v. Reinhardt*, 167 Mich.App. 584, 423 N.W.2d 275, 282 (1988); *State v. Miller*, 377 N.W.2d 506

(Minn.Ct.App.1985); *State v. Bailey*, 89 N.C.App. 212, 365 S.E.2d 651 (1988); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215, 1221 n. 11 (1983); *Commonwealth v. McNeeley*, 368 Pa.Super. 517, 534 A.2d 778, 779 (1987).

Furthermore, the courts have refused to permit these behavioral science experts to offer opinions on credibility of sexually abused children as a class. *Reinhardt, supra; People v. Matlock*, 153 Mich.App. 171, 395 N.W.2d 274, 277 (1986); *Townsend v. State*, 103 Nev. 113, 734 P.2d 705 (Nev. 1987); *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988).

As my authorities above indicate, I am in accord with Justice Sabers' recitation of what constitutes "the clear weight of authority" to say the least, and to his specific citation on the treatise written by McCord as found in 77 J.Crim.L. & Criminology 1, 43 (1986).

Inceptually, I addressed the fundamental fairness issue. Though I did not cite it before, this Court has previously announced a rule on fundamental fairness which bears mentioning instanter. It is found in *State v. Webb*, 251 N.W.2d 687 (S.D.1977). Therein, we held that the harmless error rule (this issue briefed by both parties in the case before us) ought never be used to justify unfairness at trial. I struggle to find, in the majority opinion, a dissertation on "harmless error" and seem unable to pinpoint its mention. Instead, I find in the majority opinion an extensive rationale on "retrospective" application. Again, I turn to the briefs and can find no dissertation on retrospective application of evidentiary rulings in this case. We have held, in the past, that briefs should contain a concise statement of the legal issues, related argument and citation to authority supporting the argument. *See, State v. Shull*, 331 N.W.2d 284 (S.D.1983); *Graham v. State*, 328 N.W.2d 254 (S.D.1982). Therefore, rather than to discuss "harmless error" which is briefed, the majority decision zeros in on the legal point which the parties to this appeal have not discussed in depth. This is tremendously unfair to the petitioner. It is also unfair to a person serving on the appellate court who must then turn to researching, entirely de novo. It is also against one of our oldest principles of appellate review which is that we should confine ourselves to those issues established by the briefs and not sandbag the trial court, who never had an opportunity to rule on the matter. Counsel for the petitioner is likewise sandbagged but most importantly, the petitioner has his appellate props cut out from under him. Could it be that we are *seeking*, via the majority opinion, to reverse? This, also, we have condemned in the past. *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978). Substantive law overpowers the decision of this Court today, as reflected by the extensive authority set forth in this dissent. It appears that the majority opinion would wash away this precedent and hold it for naught, under a "retrospective" thesis. Petitioner did not dig out of the books the many cases that I have cited in my dissent to support his position. Rather, this writer has. However, petitioner clearly had his foot in the door and did provide argument and some authority that this expert testimony was improperly admitted. If this Court's legal position in *McCafferty I* was wrong because of its over-expansive language, we should not be loyal to a mistake. Justice is not served by justifying a court's ruling that does violence to a fundamental rule of fairness.

Therefore, I would stand by South Dakota precedent, namely *Logue*, and with the near unanimity of the courts in this land thereby uphold Judge Hertz and reject the rationale of the majority opinion.

SABERS, Justice (dissenting).

I would affirm the habeas court because the offensive testimony went to McCafferty's guilt or innocence. The habeas court determined and stated:

> [S.F.] indicated in out-of-court statements to Haugland and Curran that McCafferty had sexually abused her. [S.F.] was unavailable as a witness; consequently, any decision by the jury as to her credibility would have necessarily been based on statements of other wit-

nesses. Specifically, Haugland and Curran testified directly as to [S.F.]'s truthfulness. Typically, the truthfulness of the victim or the accused bears heavily upon, and is intertwined with the guilt or innocence of the defendant. *State v. Myers*, 382 N.W.2d ... [91,94 (Iowa 1986)]. The statements that [S.F.] was honest and believable, of course, indicated that McCafferty was lying about the alleged sexual abuse and therefore was guilty. [S.F.]'s credibility was an important issue in this case. There can be no doubt that the believability of [S.F.]'s story was bolstered by the testimony of Dr. Curran and Haugland. As aforementioned, [S.F.] did not testify at the trial. Other than some clinical findings and some statements made by Petitioner, her testimony came to the jury in the form of hearsay statements from Dr. Curran and Mrs. Haugland. In *United States v. Azure*, ... [801 F.2d 336 (8th Cir.1986)], the alleged victim testified at trial and in front of the jury, and this testimony was then declared to be honest and truthful via the expert testimony of Dr. ten Bensel. Here, in this case, the jury never did have an opportunity to judge [S.F.]'s credibility. The jury had nothing to rely on other than the testimony of Dr. Curran and Mrs. Haugland. The trial court gave the pattern jury instruction on expert witness' testimony, presumably because of the testimony given by Dr. Curran. Additionally, it is noted that when Dr. Curran first took the stand, the prosecutor elicited the fact that not only was she a well qualified clinical psychologist, but also that she was a sister in the Sacred Heart Convent in Yankton, South Dakota. Thus, with this background established, any testimony relating to [S.F.]'s credibility would be greatly enhanced in the eyes of the jury. Since the guilt or innocence of McCafferty inherently turned on the question of [S.F.]'s credibility, it cannot be said that beyond a reasonable doubt the jury would have convicted even in the absence of the error.

This court finds that the error in admission of the testimony of [S.F.]'s truthfulness was not harmless error. Rather, the admission of this evidence constituted a due process violation as the error was of such magnitude as to deny the Petitioner fundamental fairness at his criminal trial.

The habeas court was clearly correct in concluding that "the testimony did go to McCafferty's guilt or innocence."

The fatal defect in the majority opinion is its conclusion that the cases relied upon by the habeas court constitute a *retrospective* "refinement of an evidentiary rule." * Just the opposite is true. Conclusory opinion testimony concerning the truthfulness of a witness was always prohibited and inadmissible. The majority errs in asserting that expert opinions about the believability of children were generally admissible at the time of McCafferty's trial. In fact, at the time of trial, only one court had allowed such testimony. The majority cites two cases, *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982), and *State v. Myers*, 359 N.W.2d 604 (Minn.1984), but *Myers* was decided in 1984 well after McCafferty's trial and could not provide support for the trial court's decision.

In contrast, numerous courts considering child sexual abuse cases prior to McCafferty's trial found such testimony to be inadmissible. *E.g., Commonwealth v. Carter*, 9 Mass.App. 680, 403 N.E.2d 1191 (1980) (Trial court erred in failing to strike doctor's testimony that child was telling the truth.), *aff'd* 383 Mass. 873, 417 N.E.2d 438 (1981); *People v. Fogarty*, 86 A.D.2d 617, 446 N.Y.S.2d 92, 93 (1982) (Child psychiatrist's testimony about infant complainant's veracity "improperly bolstered the complainant's credibility and unduly colored the jurors' assessment of his veracity."); *Black v. State*, 634 S.W.2d 356, 358 (Tex.

* The majority opinion is also defective in concluding that overturning McCafferty's conviction "would have disastrous effects on the criminal justice system." This argument is pure conjecture on the part of the majority as there is no evidence of any other person whose trial included expert testimony about the truthfulness of the victim. In fact, since such testimony has always been inadmissible it is unlikely that there is another person.

Ct.App.1982) ("[E]xpert testimony regarding the complainant's propensity to tell the truth was impermissible."); *People v. Sergill,* 138 Cal.App.3d 34, 39, 187 Cal.Rptr. 497, 500 (1982) ("We find no authority to support the proposition that the veracity of those who report crimes to the police is a matter sufficiently beyond common experience to require the testimony of an expert."); *State v. Middleton,* 294 Or. 427, 438, 657 P.2d 1215, 1221 (1983) ("We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth.").

The clear weight of authority has always been against admission of "an expert's opinion that a child sexual abuse complainant is telling the truth." McCord, *Expert Psychological Testimony about Child Complainants in Sexual Abuse Prosecutions: A Foray into the Admissibility of Novel Psychological Evidence,* 77 J.Crim.L. & Criminology 1, 43 (1986). As a result, McCafferty's claim does not require

the trial judge to have foreseen a shift in the law, since there has been no shift. McCafferty merely seeks the application of the correct law to his case. Indeed, it was not until recently that the state strained against the rule to urge admissibility. In its brief, the State does not argue that in 1983 courts were admitting expert testimony regarding a witness' veracity, but instead attempts to argue that courts are *beginning* to admit such testimony. Thus, even the State recognizes that in August of 1983 the testimony of Haugland and Curran was generally inadmissible.

The final irony is that the majority mistakenly reverses the habeas court by applying incorrect law *retrospectively.*