[No. A016733. First Dist., Div. Three. Nov. 8, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
KAMAL SINGH SERGILL, Defendant and Appellant.

**COUNSEL**

Patricia A. Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Michael Buzzell and Blair Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SCOTT, Acting P. J.**—Appellant Kamal Sergill was convicted by a jury of violating Penal Code section 288a, subdivision (c) (oral copulation with a person under 14). He contends the trial court erred when it permitted opinion testimony by two police officers as to the victim's credibility. We agree, and reverse the judgment.

Appellant's niece, who was eight years old at the time of trial, testified that one evening, she went with appellant, her aunt, and her four-year-old cousin to one of the family's janitorial accounts. While the aunt was upstairs in another room, appellant put his hand between his niece's legs, and left it there for awhile. The four-year-old was in the same room but was looking at something else. The girl was scared, and appellant hurt her.

Afterward, she went with appellant alone in a car. He told her he was going to buy her candy. He drove around the block, and stopped. He pushed her down, took her pants off, and put his hand and then his mouth between her legs. She could feel his tongue and his teeth. She couldn't remember how long they stopped. Then he drove off, as a car was coming. He stopped and touched her again. Then he drove to Fry's Market, where he bought her candy and bubble gum. He drove to another location, where he again took her pants off and fondled her. He gave her a five-dollar bill and told her not to tell her mother. She got home at 10:25 p.m. and put the five-dollar bill in a jewelry box; she didn't remember whether her mother asked her about the money.

The girl's mother testified that when her daughter came home, she had candy in a bag and a five-dollar bill which she said she found in the store. The next day, when the mother washed her daughter's underpants she noticed a brown stain. On Saturday, the mother gave her daughter a bath. The water hurt between the child's legs, and so she told her mother what had happened. The next day, she was examined at Kaiser Hospital.

Hans Ernst, M.D., a pediatrician, interviewed and examined the girl. He found three parallel scratch marks on her inner thighs, reddening of the vaginal area, and a minimum amount of vaginal discharge. Because of the appearance of the scratch marks, he assumed they were fingernail marks. He thought the most likely cause of the vaginal redness was physical irritation of some kind, such as rubbing; he did not believe she was suffering from a vaginal infection.

Appellant testified in his own defense. While he admitted taking his niece to work with him, and to the store to buy candy, he denied fondling or orally copulating her. In addition, his chronology of the evening differed somewhat from hers.

Appellant called two police officers who investigated the matter to testify as to certain discrepancies between what the child reported to them and her trial testimony. During cross-examination of Officer Anderson, who interviewed the child at Kaiser Hospital, the prosecutor asked the officer if he had formed an opinion as to whether the child was telling the truth, and then asked for that opinion. Defense counsel objected, on the grounds of lack of foundation and irrelevancy; counsel also complained that the question invaded the province of the jury. The court overruled the objection stating: "Number one, a witness is entitled to give his opinion on the questions that the jury is entitled to determine. Number two, this officer has had approximately seven years of experience, and has written, as I recall his testimony, something in the nature of a thousand or more reports, which indicates that he has had experience in taking witnesses' testimony, and I think the course of that he would be normally expected to judge whether a person, in his opinion, is telling the truth or not. I think that he's qualified to render his opinion in that regard."

After stating that in his opinion, the girl was being truthful, Anderson explained: "In the course of discussing what had occurred with the girl and her mother, I feel that the parent's presence bears heavily on the child's demeanor and their statements. I found, in the course of dealing with a great many children, that if I deal with them alone for a short period of time, I can ususaly determine with a high degree of accuracy whether their statements are true. There was no conflict in [the girl's] statements to me in the absence of her mother. There was still the anxiety and nervousness, but no hesitation as far as explaining the events, sequence of events was concerned. I did not get an impression that she was attempting to withhold anything or attempting to mislead me."

Officer Wells, who talked with the girl two days after the Anderson interview, was also permitted to express an opinion as to whether the girl was telling her the truth: "I believed she was telling the truth. [¶] Q. (By Miss Gallagher) Why do you say that? [¶] A. Young children don't know that much about sexual activity, and the way she described it, he was biting her there, and it was just strange behavior. She didn't know what to make of it, actually. And she was embarrassed by what happened. [¶] Q. Did you question her? [¶] A. I'm sorry. About the incident? [¶] Q. Yes, to try and arrive at the truth. [¶] A. Yes. [¶] Q. And do you think you did arrive at the truth? [¶] A. Yes, I do."

Appellant contends that this opinion testimony was inadmissible, whether analyzed as that of an expert or of a lay witness. Respondent contends that the evidence was admissible either as expert or lay witness opinion testimony. However, respondent has cited no case in which a police officer was permitted to testify as to his opinion about the truthfulness of one who claims to be the victim of a crime, and our research has found none.

■ Initially, we emphasize what this evidence was not. An individual who has known a witness for a reasonable length of time or who knows the reputation of that witness for honesty and veracity in the community may qualify to testify as to the witness' character for honesty or veracity. (Evid. Code, § 780, subd. (e); see *People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 723-724 [112 Cal.Rptr. 565]; see also *People* v. *Harris* (1969) 270 Cal.App.2d 863, 872 [76 Cal.Rptr. 130].) These officers, however, did not know this child and were unaware of her reputation for honesty or veracity or their opposites; they were not testifying as to any aspect of her character. Instead, each expressed an opinion as to whether she was telling the truth on one particular occasion.

We first consider whether this evidence was admissible as expert-opinion testimony, as it is apparent from the court's comments that it considered the officers as experts in assessing veracity of those who make reports to police.

■ " 'The decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of the inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citations.]" (*People* v. *Hernandez* (1977) 70 Cal.App.3d 271, 280 [138 Cal.Rptr. 675].) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. (Evid. Code, § 720, subd. (a).) Whether a person qualifies as an expert in a particular case depends on the facts of that case and the witness' qualifications. In considering whether a person qualifies as an expert, the field of expertise must be carefully distinguished and limited. (*People* v. *Kelly* (1976) 17 Cal.3d 24, 39 [130 Cal.Rptr. 144, 549 P.2d 1240].)

■ We recognize that the trial court is given considerable latitude in determining the qualifications of an expert, and that its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown. (*People* v. *Kelly, supra,* 17 Cal.3d at p. 39; *Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 701 [106 Cal.Rptr. 1, 505 P.2d 193].) ■ Nevertheless, we find no basis for admitting this opinion evidence as expert testimony. We find no authority to support the proposition that the veracity of those who report crimes to the police is a matter sufficiently beyond common experience to require the testimony of an expert. Moreover, even if this were a proper subject for expert testimony, nothing in this record establishes the qualifications of these officers as experts. The mere fact that they had taken numerous reports during their careers does not qualify them as experts in judging truthfulness. (Evid. Code, § 720, subd. (a).)

Nor was this testimony admissible as the opinion testimony of a lay witness. ▆ A lay witness may testify in the form of an opinion only when he cannot adequately describe his observations without using opinion wording. (Jefferson, Cal. Evidence Benchbook (1972) § 29.1, pp. 495-496.) "Whenever feasible 'concluding' should be left to the jury; however, when the details observed, even though recalled, are 'too complex or too subtle' for concrete description by the witness, he may state his general impression. [Citation.]" (*People* v. *Hurlic* (1971) 14 Cal.App.3d 122, 127 [92 Cal.Rptr. 55].) ▆ Both these officers were able to describe their interviews with the girl in concrete detail and their opinions or conclusions as to her truthfulness were not "helpful to a clear understanding of [their] testimony." (Evid. Code, § 800, subd. (b).)

We also conclude that this opinion testimony was inadmissible because it was not relevant. (Evid. Code, § 351.) We recognize, of course, that relevant evidence includes evidence that has any tendency in reason to affect the credibility of a witness. (Evid. Code, § 210.) ▆ The test of relevancy for evidence offered to support the credibility of a witness is whether it will aid the trier of fact in appraising the witness' credibility and in assessing the probative value of the witness' testimony. (Jefferson, Cal. Evidence Benchbook, *supra,* § 20.7, pp. 247-248.) Whether or not evidence tendered to affect the credibility of a witness is admissible depends on a preliminary ruling by the trial court that such evidence would be sufficient to sustain a finding that the witness' credibility is, indeed, affected thereby. (Evid. Code, § 403; *Granville* v. *Parsons* (1968) 259 Cal.App.2d 298, 304 [66 Cal.Rptr. 149].) If a *reasonable* trier of fact could believe that the evidence would be sufficient to have a *reasonable* tendency to prove or disprove the witness' credibility, then the evidence is relevant and should be admitted. (See *ibid.*)

▆ This opinion testimony did not fall within any of the categories listed in Evidence Code section 780, which enumerates the most common factors bearing on the question of credibility. (See Cal. Law Revision Com. com. to Evid. Code, § 780, 29B West's Ann. Evid. Code (1966 ed.) p. 280; Deering's Ann. Cal. Evid. Code (1966 ed.) p. 196.) As we have stated, these officers neither knew the child, nor knew her reputation for truthfulness. (See *People* v. *Mendoza, supra,* 37 Cal.App.3d 717, 724.) Instead, their conclusions that she was telling the truth were based on their own self-proclaimed expertise in assessing victim veracity, but the record is devoid of any evidence to establish their qualifications in this regard. We conclude that the officers' opinions on the child's truthfulness during their limited contacts with her did not have a *reasonable* tendency to prove or disprove her credibility and were therefore not relevant.

We must examine the entire cause, including the evidence, and determine whether it is reasonably probable that a result more favorable to appellant would have been reached had this evidence not been admitted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Evid. Code, § 353.) The critical question in this case was the child's credibility. When the case was previously tried, there was a mistrial, as the jury was unable to agree on a verdict.[1] There were some inconsistencies in the child's several accounts of this incident, and between her version of what happened and her mother's. There was evidence of animosity among the members of this family. While there was medical testimony that the girl's scratches and redness were consistent with sexual abuse, the physician's diagnosis was affected by her credibility, as his diagnosis was premised on her report of appellant's conduct. The physician acknowledged that had he seen the girl without hearing the story, sexual abuse would have been only one of possible diagnoses, and he would have been puzzled as to the exact cause of what he observed.

In the presence of the jury, the court declared in effect that Officer Anderson was especially qualified to render his opinion as to whether a person reporting a crime was telling the truth. The officer then stated that he could usually determine "with a high degree of accuracy" whether a child's statements were true, and that he believed the girl was telling the truth to him. Officer Wells testified that she questioned the girl to try and arrive at the truth, and that she thought she had determined the truth. The court's comment may well have caused the jury to place undue emphasis on the officers' testimony. It is reasonably probable that the combined effect of the court's comment and the improperly admitted opinion testimony was the usurpation of the jury's function as fact finder. (See *People* v. *Alva* (1979) 90 Cal.App.3d 418, 427 [153 Cal.Rptr. 644].) We must conclude that the admission of this evidence requires reversal.

Judgment is reversed.

Feinberg, J., and Barry-Deal, J., concurred.

---

[1]According to appellant's counsel, at the first trial the jury was divided nine to three for acquittal. In his motion for new trial in this case, appellant argued that at the first trial, the officers' opinion testimony was not presented. While we do not have a transcript of that trial, appellant's characterization of the evidence at that trial is not contradicted by respondent.