Filed 10/9/13  P. v. Morales CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MICHAEL MORALES,<br><br>　　　Defendant and Appellant. | B244053<br><br>(Los Angeles County<br>Super. Ct. No. BA376983) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith Champagne and Victor H. Greenberg, Judges.  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Michael Morales was convicted of corporal injury to a former cohabitant (Pen. Code,[1] § 273.5, subd. (a)) and contempt of court (§ 166, subd. (c)(1).) He appeals, contending that he was incompetent to stand trial; that inadmissible evidence was admitted; that the prosecutor committed misconduct; and that his violation of a protective order could not be punished other than by probation revocation. The Attorney General argues on appeal that the judgment must be modified to add fines that were not imposed by the trial court at sentencing. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Morales was ordered by a court as a condition of probation to stay away from Norma P. and to have no contact with her. In 2010, Morales telephoned Norma P. and insisted that they meet. He then hit her repeatedly, leading to charges of corporal injury to a former cohabitant and contempt of court for willfully and knowingly violating a protective order.

In March 2011, prior to trial, defense counsel expressed doubt concerning Morales' competency. The court declared a doubt pursuant to section 1368 and suspended criminal proceedings pending a medical evaluation of Morales. Rupali Chadha, M.D., examined Morales and concluded that he was competent to stand trial. In May 2011, the court found Morales competent after a competency hearing.

Morales was convicted as charged. After Morales was convicted, his counsel declared another doubt as to his competency, and the court again instituted competency proceedings. Three experts evaluated Morales: Jack Rothberg, M.D., Ph.D.; Kory Knapke, M.D.; and Gregory Cohen, M.D. Rothberg concluded that Morales was not competent, while Knapke and Cohen believed Morales to be competent. The court ruled in August 2012 that Morales was competent and resumed proceedings.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Morales was sentenced to 5 years in state prison for the corporal injury to Norma P. and an associated enhancement found true by the jury (§ 667.5), with a concurrent one-year jail sentence for violating the protective order. He appeals.

**DISCUSSION**

### I. Competency

Morales was twice found competent to stand trial. It is not entirely clear from his briefing whether Morales contends that both determinations were incorrect or that only the later determination was in error. In an abundance of caution, we address both rulings.

#### A. First Competency Determination

When there exists substantial evidence of incompetence, the trial court is required to declare a doubt and to conduct a full competency hearing. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1064.) The court did so prior to trial, and then found Morales competent to stand trial. We review that decision based on the information available to the trial court at the time (*People v. Panah* (2005) 35 Cal.4th 395, 434, fn. 10), and we determine whether substantial evidence, viewed in the light most favorable to the determination, supports the trial court's finding. (*People v. Marshall* (1997) 15 Cal.4th 1, 31 (*Marshall*).) The only evidence presented to the court at the first competency hearing was Chadha's report, which the court observed was "very thorough," based on "a comprehensive interview," and "unequivocal" in its findings. Chadha concluded that Morales did not suffer from a major mental illness, had the ability to understand the nature and purpose of the proceedings against him, and was able to assist counsel in his own defense in a rational manner. Morales presented as alert, attentive, and cooperative. His speech was fluent and forthcoming, and he answered Chadha's questions directly and appropriately without hesitation. Morales denied hallucinations, did not appear to be hallucinating, and was not paranoid. His insight and judgment were good, and he was willing to share information readily to help in his examination. Morales understood the

3

nature and purpose of the proceedings, and he could identify courtroom actors and their roles in legal proceedings. He knew the various pleas he could enter and explained the consequences arising from the different pleas. Morales's counsel submitted on the report and declined to argue at the competency hearing. Based on the evidence before the court, substantial evidence supported the trial court's pretrial determination that Morales was competent to stand trial.

Morales contends that Chadha's report was flawed because Chadha did not recognize that Morales incorrectly described the charge against him was battery, when in fact it was corporal injury to a former cohabitant. Morales claims this incorrect description demonstrates that he lacked an understanding of the criminal proceedings against him. Morales, however, was aware that he was being tried for physically injuring Norma P.; his misconception that the offense was charged as a battery rather than as a corporal injury on a former cohabitant crime does not tend to demonstrate any meaningful lack of understanding or incompetence.

B. Second Competency Determination

Even after a court has found a defendant competent to stand trial, as here, the court has a continuing duty to monitor for substantial evidence of the defendant's incompetency. (*People v. Mixon* (1990) 225 Cal.App.3d 1471, 1485.) A second competency hearing must be held when the court is presented with a substantial change of circumstances or with new evidence casting a serious doubt on the defendant's competency. (*Marshall*, *supra*, 15 Cal.4th at p. 33.) Here, the court conducted a second competency hearing and again found Morales competent. We review this determination for substantial evidence. (*Id*. at p. 31.)

Substantial evidence supports the trial court's conclusion that Morales was competent. Knapke interviewed Morales and found no evidence that he suffered from a major mental illness or disorder. While Morales was deceptive and manipulative, he answered questions logically and appropriately, and his responses were goal directed. He did not appear to be delusional or psychotic, and he did not appear to be responding to

4

internal stimuli. Morales understood the charges and proceedings against him, and appeared able to cooperate with his attorney and the court if he so desired. Similarly, Morales appeared competent to stand trial to Cohen. Cohen found Morales's thinking to be organized, with no evident gross delusions or signs of hallucinations. He displayed some idiosyncratic thinking and poor judgment but did not present signs of a severe mental disorder. Cohen believed that Morales understood the nature and the purpose of the criminal proceedings, and that he was able to cooperate in a rational manner with counsel in presenting a defense. Based on this evidence, the court could reasonably find that Morales was competent.

Morales, however, contends that his unreasonable focus on his medical condition was irrational, constituted tangential thinking, and undermined his ability to assist counsel. He asserts his history of diabetes, high blood pressure, excessive alcohol consumption, daily cocaine use, marijuana use, and a traumatic brain injury impaired his ability to assist counsel with his defense. Morales argues that "[i]t is reasonable to conclude based on this record that appellant's mental faculties were compromised by his mental illness and lack of proper treatment, or at a bare minimum that his medical problems hampered his ability to understand the criminal proceedings and to assist counsel." While the trial court perhaps could have drawn the conclusion that Morales advocates, its conclusion that Morales was competent was supported by the opinions and observations of three of the four doctors who examined Morales, each of whom set forth observations that formed the basis of their conclusions that Morales was coherent and rational, had no history of mental illness, understood the proceedings against him, and was able to assist in his own defense.

Morales next argues that he was incompetent because he did not understand the proceedings against him. Morales reported his potential sentencing exposure differently to the various evaluators: he told one doctor he was facing a three-year sentence, and another a six-month sentence, when he was ultimately sentenced to five years in prison. As the Attorney General notes, Morales did face a three-year sentence for the corporal injury to Norma P.; two years were added for a sentence enhancement. Even if Morales

5

had a misunderstanding about the possible sentence, that does not demonstrate that he did not rationally understand the proceedings in general or that he was not competent to stand trial.

## II.    Cross-Examination

Morales called a police officer to testify about his investigation after the incident. On cross-examination, the prosecutor asked three consecutive questions that were designed to elicit how the officer felt after he contacted Norma P.  Defense counsel objected, and the objections were sustained.  Finally, the prosecutor rephrased his question to omit the officer's feelings, and the cross-examination proceeded without further objection.

On appeal, Morales complains that the evidence that the prosecutor was attempting to elicit was not admissible and claims that the judgment must be reversed on the authority of *People v. Sergill* (1982) 138 Cal.App.3d 34.  In *Sergill*, the court overruled objections to questions posed to police officers and the officers, as a result, testified to their opinions as to whether the victim was telling the truth about being molested.  (*Id*. at p. 38.)  Here, in contrast, the court sustained defense objections to the questions soliciting the officer's views, and no opinion testimony was permitted. Accordingly, *Sergill* has no application here.

Morales then argues that the "evidence was not admissible" as evidence of a witness's character for honesty and veracity, as expert witness testimony, or as lay witness testimony, but he has failed to identify any evidence that was improperly admitted because the trial court sustained defense objections to each of the three improper questions.  To the extent that Morales is claiming that any evidence was improperly admitted, as when he claims that the officer "vouched for the credibility" of witnesses, the record does not support his contention.  To the extent that Morales contends that the prosecutor's questions themselves were evidence that "suggested Officer Gaines believed Mr. Drake and Norma P. were truthful," an attorney's questions

6

do not constitute evidence (*People v. Gonzales* (2011) 51 Cal.4th 894, 921), and the jury was specifically instructed on that point with CALCRIM No. 222.

Alternatively, Morales contends that the questions constituted prosecutorial misconduct. To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely objection, make known the basis of the objection, and ask the trial court to admonish the jury. (*People v. Hill* (1998) 17 Cal.4th 800, 820.) Unless the prosecutor's misconduct could not be cured by an admonition, the defendant must object to the alleged misconduct at trial. (*Ibid.*) The evidence here does not establish that an admonition would have been insufficient to remedy any misconduct. Morales has therefore waived this argument by failing to object to the questions as misconduct and to request that the jury be admonished not to consider the improper questions for any purpose.

### III.     Conviction for Violating the Protective Order

During trial, the parties stipulated that Morales had been "served with a lawful written criminal protective order in a criminal case ordering him to stay away and have no contact with Norma P[.], as a condition of probation pursuant to Penal Code section 1203.0[9]7."[2] Morales was convicted of the misdemeanor offense of violating that protective order under section 166, subdivision (c)(1), which provides that it is contempt of court to willfully and knowingly violate certain protective orders.

Morales contends that he cannot be prosecuted for violating the protective order because it was issued as a condition of probation and can therefore only be punished by the revocation of probation, citing *People v. Selga* (2008) 162 Cal.App.4th 113, 120 (*Selga*); *People v. Johnson* (1993) 20 Cal.App.4th 106, 112-113 (*Johnson*); and *People v. Petty* (2013) 213 Cal.App.4th 1410, 1424, fn. 13 (*Petty*). Each of these cases states the principle that the proper punishment for the violation of a protective order entered as a

---

**2**     The reporter's transcript lists the statute as section "1203.027," but there is no such section of the Penal Code. This was either a misstatement by the prosecutor or a transcription error, as the relevant provision is section 1203.097.

condition of probation is probation revocation—unless "the conduct constituting the probation violation is also a crime," in which case "the probationer can be prosecuted for that crime and if convicted punished for a violation of the criminal law." (*Johnson*, at p. 112, fn. 4; see also *Selga*, at p. 120 [revocation is the response to violation if the violative conduct "is not otherwise criminal"]; *Petty*, at p. 1424, fn. 13 [revocation is the consequence for violation of protective order if the violation is "noncriminal"].) Here, however, section 166, subdivision (c)(1) specifically criminalized the violation of the protective order as contempt. As the violation of the protective order was not only a violation of the terms of probation but also a distinct offense of contempt under section 166, subdivision (c)(1), Morales was properly prosecuted for this offense. (*Johnson*, at p. 112, fn. 4; *Selga*, at p. 120; *Petty*, at p. 1424, fn. 13.)

Morales notes that the prior case was "not a domestic violence case" but a case of disturbing the peace, and asserts without explanation that this is a reason why the conviction must be reversed under *Selga*, *supra*, 162 Cal.App.4th 113 and *Johnson*, *supra*, 20 Cal.App.4th 106. Morales, however, stipulated that the protective order was both lawful and issued under section 1203.097, the statutory provision covering terms of probation for crimes of domestic violence, and he has not demonstrated that he could not be prosecuted for violating this protective order under section 166, subdivision (c)(1). Morales has not established any error in the misdemeanor contempt conviction.

### IV. Failure to Impose Restitution and Parole Revocation Fines

The Attorney General requests that the abstract of judgment be modified to impose two fines in the amount of $200 each under sections 1202.45 and 1202.4, subdivision (b). Sections 1202.4 and 1202.45 "require trial courts to impose a restitution fine as part of the judgment of conviction entered against a criminal defendant and, in cases where parole is granted, an additional fine in the same amount suspended unless parole is later revoked. The restitution fine under section 1202.4 is mandatory unless the sentencing court, in the words of the statute, 'finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' (§ 1202.4, subd. (b).) In cases in which

8

the court imposes a restitution fine, imposition of a parole revocation fine is also mandatory.  (§ 1202.45.)"  (*People v. Tillman* (2000) 22 Cal.4th 300, 301-302 (*Tillman*).)

When a trial court "fail[s] to discharge the duty imposed by these statutes, omitting the fines from judgments of conviction without making the required finding on the record" (*Tillman*, *supra*, 22 Cal.4th at p. 302), the prosecutor must object at the time of sentencing, or the error in the court's omission is waived.  (*Id*. at p. 303.)  As the prosecutor here did not object at sentencing to the court's omission of the fines without making the required findings on the record, the error was waived.  (*Ibid*.)  We decline the request to amend the judgment to add these fees.

## DISPOSITION

The judgment is affirmed.


ZELON, J.


We concur:



PERLUSS, P. J.



WOODS, J.