Filed 9/30/15  P. v. Rodriguez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE OLIVAREZ RODRIGUEZ,<br><br>    Defendant and Appellant. | B254913<br><br>(Los Angeles County<br>Super. Ct. No. VA122956) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick T. Meyers, Judge.  Affirmed.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jose Olivarez Rodriguez appeals from the judgment entered following his convictions on 13 counts of committing a lewd act upon a child under 14 years old. (Pen. Code, § 288, subd. (a); counts 12, 13, 16, 19 – 21, 23 – 29.)  The court sentenced appellant to prison for seven consecutive terms of 15 years to life, with concurrent terms on his remaining convictions.  We affirm.

## *FACTUAL SUMMARY*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which is undisputed, established appellant committed lewd acts upon four children under 14 years old.[1]  In defense, appellant presented testimony from character witnesses, including Leticia Carranza, his niece.

## *ISSUES*

Appellant claims (1) the trial court erroneously excluded testimony from Carranza concerning suggestive questioning of certain alleged victims by the mother of M.M. (an alleged victim in a count of which appellant ultimately was acquitted), (2) the trial court erroneously ruled appellant could not argue to the jury that evidence of his good character could not be rebutted by evidence of the crimes, and (3) cumulative reversible error occurred.

---

[1]     In particular, Katrina M. was born in 1993.  From about 2000 through 2005, appellant committed five lewd acts upon her (counts 24 – 28).  St.M. was born in 1997. From about 2002 through 2005, appellant committed four lewd acts upon her (counts 12, 13, 16 & 29).  B.M. was born in 1997.  In about 2004 or 2005, appellant committed a lewd act upon her (count 23).  Evelyn M. was born in 2001.  From about 2008 through 2011, appellant committed three lewd acts upon her (counts 19 – 21).

*DISCUSSION*

1. *The Court Did Not Erroneously Exclude Testimony Concerning Suggestive Questions.*

      a. *Pertinent Facts.*

The amended information alleged, inter alia, as to counts 1 and 2 that appellant committed a lewd act upon a child under 14 years old (Pen. Code, § 288, subd. (a)), i.e., upon victims M.M. and Se.M., respectively. Each of counts 3, 19, 20, and 21 alleged appellant committed that crime against Evelyn M. In October 2013, appellant was arraigned on the amended information and the court granted the People's motion to dismiss count 3.

On November 6, 2013, Carranza testified for the defense, inter alia, as follows. Carranza, and M.M.'s mother (hereafter, the mother), were at Karina M.'s house when the mother had a chance to talk with some of the girls about the allegations.[2] In response to a nonleading question, Carranza testified that M.M., Se.M. and Evelyn M. were present when the mother was asking questions.[3] The following occurred during appellant's direct examination of Carranza: "Q How was she [the mother] asking those questions? [¶] A She was suggesting." The court asked for a sidebar.

---

[2]     Appellant's counsel asked Carranza, "And [the girls] are all together when [the mother] was asking questions?" The court sustained the prosecutor's objection that the question was leading. Shortly thereafter, Carranza gave the testimony challenged here on appeal and discussed *post*.

[3]     Carranza was a first grade teacher and, as such, was mandated to report "sexual or any type of abuse." Appellant's counsel asked Carranza, "you have *some* training in how to interview the kids initially, at least when there's any type of indication of abuse?" (Italics added.) Carranza replied, "Yes, we do it every year." Carranza did not further specify what the training consisted of, or how often, or for what period of time, she received training annually. Carranza was not reporting a matter as a teacher when she was not on duty.

At sidebar, the court stated, "It is hearsay.  It's going to be hearsay" and the court asked what hearsay exception applied.  Appellant's counsel represented the proposed testimony was nonhearsay "introduced to see how [the mother] conducted the investigation."  The prosecutor argued the question called for hearsay and appellant was trying to suggest through Carranza that the mother "planted . . . ideas."  The prosecutor argued, "you can't get to that without explicitly stating what [the mother] said, and it's speculation that this witness is . . . saying that it's suggestive.  That's an opinion.  That's speculation.  There's no foundation for that.  And what [appellant's] trying to do is get that in, her statements, . . . to . . . prejudice the jury to say that somebody suggested to these girls what to say and this is clearly coached." (*Sic*.)

Appellant's counsel later represented, "She [Carranza] is going to say that she [the mother] suggested that did she [*sic*] touch here, did he touch you here.  That's what I'm trying to show."  The court stated, "It is for [the] matter of the truth asserted.  It will not be permitted."  The court added, "And no other explanation convinces me that it's for some other purpose other than for [a] hearsay purpose."  (Counsel's interjections omitted.)  On November 8, 2013, the jury deadlocked on counts 1 and 2, and the court declared a mistrial as to those counts.  The jury convicted appellant on other counts as previously indicated.  In February 2014, the trial court granted the People's motion to dismiss counts 1 and 2.

b.  *Analysis.*

Appellant claims the trial court erred by excluding Carranza's testimony concerning suggestive questioning by the mother.  We disagree.

(1)  *Counsel's Question Called for Impermissible Opinion Testimony.*

Appellant's counsel asked Carranza, "*How* was she [the mother] asking those questions?"  (Italics added.)  The question was vague.  It reasonably could have been understood as asking about the mother's words, tone, and/or gestures or nods, if any, or about whether the mother was sitting, standing, or walking during the questioning.  Importantly, the question also reasonably could have been understood as asking for

4

Carranza's summary characterization of one or more of the above factors, i.e., asking for her *opinion*.

Carranza's interrupted reply was, "She was suggesting." The reply was reasonably susceptible of multiple interpretations, one of which was that Carranza was testifying that in her characterizing *opinion*, the mother was "suggesting." Appellant's counsel represented he was introducing Carranza's testimony "to see *how* [the mother] conducted the investigation," (italics added) but appellant's counsel did not then state he was not seeking to elicit opinion testimony. The prosecutor argued to the effect Carranza was going to testify that, in her opinion, the mother was planting ideas, i.e., suggesting to the girls that appellant touched them.

A trial court reasonably could conclude appellant's counsel's question, "How was she asking those questions?" called for Carranza's opinion testimony, and, accordingly, Carranza's reply, "She was suggesting," was opinion testimony. Indeed, based on all the facts (including those in fn. 2, *ante*) a trial court reasonably could conclude appellant's counsel's question called for opinion testimony from Carranza, a defense witness, that the mother was suggesting to the girls that appellant touched them.

To the extent appellant's counsel's question, "How was she asking those questions?" called for Carranza's *lay* opinion testimony that the mother was suggesting to the girls that appellant touched them, appellant's counsel simply could have asked Carranza, "What were the questions?" The latter question would have permitted the jury to draw its own conclusions as to whether the two questions ("did she [*sic*] touch here, did he touch you here") that the mother allegedly asked were suggestive.

In his reply brief, appellant poses a hypothetical question which he maintains is analogous to the above two questions, then he asserts, "a layperson would readily understand the [hypothetical question] was suggestive without the need to have an expert testify that it was." That is equally true as against a claimed need for lay opinion. Lay opinion testimony by Carranza was inadmissible as not helpful to a clear understanding of her testimony. (Cf. *People v. Miron* (1989) 210 Cal.App.3d 580, 583-584.)

To the extent the question of appellant's counsel called for *expert* testimony, a trial court reasonably could conclude Carranza was not qualified as an expert (see fn. 3, *ante*); therefore, her opinion lacked foundation. A trial court also reasonably could conclude that the subject of whether the two questions (that the mother allegedly asked the girls) were suggestive was "'one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness'" (*People v. Sergill* (1982) 138 Cal.App.3d 34, 39 (*Sergill*)); therefore, expert testimony on that issue was inadmissible. As mentioned, appellant maintains that if the two questions were suggestive, a layperson would readily understand that without needing expert testimony; we agree.

We review a trial court's admissibility ruling for abuse of discretion. (*People v. Kopatz* (2015) 61 Cal.4th 62, 85.) We conclude appellant's counsel's question, "How was she asking those questions?" called for inadmissible opinion, and lacked foundation (cf. *Sergill, supra,* 138 Cal.App.3d at p. 39; see *People v. Loker* (2008) 44 Cal.4th 691, 739; Evid. Code, § 720, subd. (a));[4] therefore, the trial court did not abuse its discretion by excluding Carranza's proposed testimony. The fact the trial court did not expressly rely on this reasoning when ruling does not compel a contrary conclusion; we review the court's ruling, not the court's reasoning. (*People v. Mason* (1991) 52 Cal.3d 909, 944; *People v. Dawkins* (2014) 230 Cal.App.4th 991, 1004.)

(2) *No Prejudicial Error Occurred.*

Finally, even if the trial court erred by excluding the proposed testimony, it does not follow we must reverse the judgment. First, to the extent the proposed testimony might have impacted appellant's liability on count 1 (M.M.), count 2 (Se.M.), and/or count 3 (Evelyn M.), there was no prejudice because the court dismissed those counts.

---

[4]    Our Supreme Court has expressed differing views on whether a mere foundation objection preserves for appellate review the issue of an alleged expert's expertise. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1088, fn. 2.) In the present case, the prosecutor did not pose a mere foundation objection but posed a foundation objection immediately after posing related opinion and speculation objections.

(Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)  Second, appellant's counsel represented the mother asked two questions of M.M., Se.M., and Evelyn M.  To that extent, there was no prejudice as to appellant's convictions on the counts involving the remaining victims, i.e., St.M. (counts 12, 13, 16, & 29), B.M. (count 23), and/or Karina M. (counts 24 – 28).  (Cf. *Watson*, at p. 836.)

Third, there is no dispute as to the sufficiency of the evidence as to appellant's convictions on the above mentioned counts involving St.M., B.M., and Karina M. as victims.  That evidence supported Evelyn M.'s testimony that appellant committed the offenses that the jury ultimately convicted him of committing against her (counts 19-21).  No prejudicial error occurred (cf. *Watson*, *supra,* 46 Cal.2d at p. 836) and no violation of appellant's constitutional rights under the Fifth, Sixth, and/or Fourteenth Amendments occurred.

2. *Appellant Has Failed to Show the Court Struck His Character Argument to the Jury.*

    a. *Pertinent Facts.*

During trial, appellant presented character witnesses and the court gave CALCRIM No. 350 to the jury.[5]  During jury argument, appellant's counsel commented, "this case is about character against credibility."  Appellant's counsel commented CALCRIM No. 350 said that evidence of appellant's character for normal and appropriate conduct towards various minor females could itself create reasonable doubt.  Appellant's counsel also commented, "You heard from a few witnesses on the character

---

[5]    The instruction stated, "You have heard character testimony by witnesses that the defendant was personally observed by them to conduct himself normally and appropriately toward various minor females in the community where he lives or works.  [¶]  You may take that testimony into consideration along with all the other evidence in deciding whether the People have proved that the defendant is guilty beyond a reasonable doubt.  [¶]  Evidence of the defendant's character for normal and appropriate conduct toward various minor females can by itself create a reasonable doubt.  However, evidence of the defendant's good character may be countered by evidence of his bad character for the same trait.  You must decide the meaning and importance of the character evidence."

7

side.  The district attorney had a chance to produce witnesses against [appellant's] character, but there are none."

Appellant's counsel later commented, "Well, she [the prosecutor] had a bunch of relatives she could have brought in to testify otherwise.  There's four sets of parents of these girls.  Not one of them came in and [said], you know what?  This is a shady guy. . . .  [¶]  . . .  Not one indication that this guy is capable of doing that."  Appellant's counsel made all of the above comments without objection.

The following vague colloquy then occurred (and we have italicized the language on which appellant apparently relies in support of his claim):  "[Appellant's Counsel]: And this [CALCRIM No. 350] jury instruction's exactly for that.  If you believe that his character for normal appropriate conduct towards various minor females.  It can by itself create reasonable doubt.  However, if the defendant's good character may be countered *by evidence of bad character, which is never brought in, and we are not talking about the allegation by the girls.  That's not the evidence of bad character.  She put on witnesses to counteract our character witnesses.  That's different than the allegations.  Not one person.  [¶]  [The Prosecutor]:  Objection.  Improper statement of the law.  [¶]  The Court:  Sustained.  [¶]  . . .  [¶]  [The Prosecutor]:  May that be stricken?  [¶]  The Court: Sustained.*"[6]  (*Sic.*)

---

[6]      Appellant's counsel later commented without objection that four sets of parents had an opportunity to observe appellant for years, but no one indicated appellant exhibited an interest in children.  The following later occurred:  "[Appellant's Counsel]: And we talked about character and reputation.  There are four sets of parents who could come in and say, you know what?  Shady guy.  We heard this about him or, . . . we talked to the neighbors and he was just . . . watching girls go by and when he looked at them.  Anything.  Anything.  [¶]  Nothing.  The only character evidence from the witness --  [¶] [The Prosecutor]:  Objection.  Misstates the law.  [¶]  The Court: . . .  [¶]  . . .  I don't think we have any evidence in the record with respect to neighbors.  I guess the point of the argument is that no one was calling, so overruled."  Appellant's counsel later argued without objection that the jury's role was to determine if there was enough evidence "to convict the guy who has . . . nothing against his character" and there was "[n]othing to show any bad character on the side of [appellant]."

8

During rebuttal argument, the prosecutor, referring to CALCRIM No. 350, commented without objection, "counsel misstates the instruction" and "[i]t's right there in writing, and there is nowhere in that instruction does it say that the People *have* to introduce new witnesses to show his bad character. It doesn't say that." (*Sic*; italics added.)

b. *Analysis.*

Appellant claims the trial court erred by striking his jury argument that evidence of his good character could not be rebutted by evidence of the crimes. We reject his claim. The People may offer rebuttal evidence of a defendant's character to prove the defendant's conduct in conformity therewith (Evid. Code, § 1102, subds. (a) & (b)), as a basis for the further inference the defendant, *conducting* himself or herself in conformity with such character, committed a crime. That is different from an alleged victim's testimony relating *what happened* to the alleged victim as evidence a defendant committed a crime.

We assume, as phrased by appellant, evidence of his good character cannot be rebutted by evidence of the crimes. We further assume that, if appellant attempted to argue that point to the jury, and the trial court ruled he could not, the trial court erred.

However, the burden is on appellant to demonstrate error from the record; error will not be presumed. (*In re Kathy P.* (1979) 25 Cal.3d 91, 102; *People v. Garcia* (1987) 195 Cal.App.3d 191, 198.) It is not clear that the trial court actually struck the argument that evidence of appellant's good character could not be rebutted by evidence of the crimes. The colloquy between the court and counsel was confusing.

The trial court's ruling sustained the prosecutor's objection that appellant made an improper statement of the law but, during the discussions leading to that ruling, neither the prosecutor nor the trial court expressly stated what the improper statement of law was.

Moreover, as the pertinent facts demonstrate (including those in fn. 6, *ante*), appellant repeatedly argued to the jury, without objections or adverse rulings by the trial court, that the People had presented *no* rebuttal character evidence. The necessary implication of that argument was that evidence of appellant's good character could not be rebutted by evidence of the crimes. Further, if the prosecutor or trial court had viewed as improper the argument that evidence of appellant's good character could not be rebutted by evidence of the crimes, we might have expected repeated prosecutorial objections and adverse rulings by the trial court to that effect, but that did not occur.

We note the prosecutor, in his rebuttal jury argument, did not assert appellant's counsel misstated CALCRIM No. 350, by arguing that evidence of appellant's good character could not be rebutted by evidence of the crimes. Instead, the prosecutor asserted appellant's counsel misstated CALCRIM No. 350, by arguing the People were *required* to present rebuttal character evidence.

Appellant has failed to meet his burden of demonstrating the trial court struck his argument that evidence of his good character could not be rebutted by evidence of the crimes; therefore he has failed to demonstrate error, constitutional or otherwise.

Finally, even if, after the trial court sustained the prosecutor's objection, the trial court struck appellant's argument that evidence of his good character could not be rebutted by evidence of the crimes, appellant's counsel effectively made that argument when, on several other occasions previously discussed, he argued to the jury without objection that the People had presented *no* evidence of his bad character. To the extent, therefore, the trial court ruled on one occasion that appellant could not argue to the jury that evidence of his good character could not be rebutted by evidence of the crimes, the trial court did not commit prejudicial error (*Watson, supra*, 46 Cal.2d at p. 836) nor did the trial court violate appellant's constitutional rights under the Fifth, Sixth, and/or Fourteenth Amendments.[7]

---

[7]    In light of our analysis, we reject appellant's claim that cumulative reversible error occurred.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



EDMON, P. J.



ALDRICH, J.