Filed 6/1/26 P. v. Zeasley CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEITH STEPHEN RAY ZEASLEY,<br><br>    Defendant and Appellant. | 2d Crim. No. B339294<br>(Super. Ct. Nos. 21CR01138,<br>20CR07707)<br>(Santa Barbara County) |

Keith Stephen Ray Zeasley appeals from the judgment after a jury convicted him of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count 1), four counts of attempting to dissuade a witness from prosecuting a crime (§ 136.1, subd. (b)(2); counts 2, 4, 8, and 9), three counts of attempted criminal threats (§§ 664, 422; counts 3, 5, and 7), dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 6), knowingly and maliciously dissuading a witness

---

[1] Undesignated statutory references are to the Penal Code.

from testifying (§ 136.1, subd. (a)(2); count 11),[2] and 38 misdemeanor counts of contempt of court (§ 166, subd. (c)(1); counts 12–50). The jury also found true that Zeasley had suffered a prior serious felony and one strike prior within the "Three Strikes" law (§§ 667, subds. (a)(1), (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1)). The court found true circumstances in aggravation. (Cal. Rules of Court, rule 4.421(b)(2), (b)(3).) The trial court sentenced Zeasley to 36 years in state prison, which included a one-year consecutive sentence for violation of probation in another case (20CR07707).

Zeasley contends his convictions on counts 1 through 9 and 11 should be reversed because the court admitted improper opinion testimony regarding intimate partner battering. We direct correction of the abstract and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

Zeasley and B.M. began a dating relationship in 2019. They argued frequently and Zeasley would "hit[], chok[e], [and] stomp[] [her] out."

In February 2021, Zeasley moved in with B.M. after he was released from jail for a prior domestic violence incident involving B.M. One evening, Zeasley and B.M. began arguing about a text message she had received from a man she was dating while Zeasley was in jail. Zeasley "sock[ed]" B.M. in the head, pulled her hair, threw a bicycle at her, and "stomped" her head into the floor. He also kicked B.M., removed her clothes, poured dirty

---

[2] The abstract of judgment erroneously lists count 11 as subdivision (b)(2) rather than subdivision (a)(2) of section 136.1. We direct the clerk of the superior court to issue a corrected abstract.

mop water over her, and hit her with closed fists. A friend of B.M. was present and witnessed the attack.

Shortly thereafter, law enforcement arrived at B.M.'s apartment. B.M. denied that Zeasley had assaulted her because she did not want "to get him in trouble." Zeasley was arrested and called B.M. 20 to 30 times from the jail. He left multiple messages for her, stating, "Why aren't you answering your phone, bitch?" and "You put[] me in fucking jail, you stupid bitch."

B.M. refused to testify at Zeasley's preliminary hearing because she was still dating him and did not want to "see him get put away." At trial, B.M. testified because she "wanted to speak [her] truth."

Zeasley had previously assaulted B.M. in July 2019. A neighbor called law enforcement because they heard B.M. "screaming through the wall." B.M. was severely bruised and taken to the hospital. B.M. obtained an emergency protective order.

Prior to trial, the prosecutor filed a motion in limine to allow District Attorney Investigator Megan Harrison to testify as an expert witness about domestic violence. In response to defense counsel's request for an offer of proof, the prosecutor said Harrison would "address common domestic violence themes, including recanting victims, the cycle of violence, the power and control wheel, and misconceptions about victim behavior." The trial court overruled defense counsel's objection under Evidence Code section 352. Counsel did not object to Harrison's qualifications.

During the prosecution's case in chief, Harrison testified that she had worked as a police officer for 12 years prior to working as a district attorney investigator. She also said that

she had testified as an expert in "areas of domestic violence and strangulation." Harrison had investigated "over 700" domestic violence cases, including directly contacting victims and abusers. She worked with probation officers, interviewed doctors and nurses who treat victims of domestic violence, and "worked very closely" with the nonprofit organization Domestic Violence Solutions. Harrison also taught classes "in the areas of domestic violence."

Harrison completed police academy training in 2010, an eight-hour course on domestic violence at the district attorney's office in 2016, and a 36-hour domestic violence strangulation seminar. She learned about "the cycle of violence as well as the power and control wheel."

Based on her "experience in handling the domestic violence cases," Harrison testified there were misconceptions about the reactions of victims of domestic violence. Misconceptions include believing that victims would leave their abusers immediately if there was abuse, not recognizing that victims return to their abusers even after reporting abuse, and underestimating how hard it is for victims to leave their abusers. Harrison said it is "very common" for victims to recant. Victims "feel embarrassment" when having to testify and "sometimes" are not "forthcoming to law enforcement."

Harrison testified about the three phases comprising the cycle of violence in a domestic violence relationship. The first is a "tension building phase" where there is "emotional verbal abuse." The second consists of an incident of physical abuse, followed by a third "honeymoon" phase. Harrison had personally observed this cycle in cases she had investigated. Among the approximately 700 cases that she worked on, Harrison estimated that victims

4

left after the first incident of abuse in only half a dozen cases. Harrison said, "the Cycle of Violence occurs in my experience in almost every situation of physical abuse."

With respect to the power and control wheel, Harrison said there were certain tactics that abusers used to "develop the power and control over another in a domestic violence relationship." These tactics include "coercion and threats, intimidation, emotional abuse, economic abuse, societal privilege, minimizing, denying, and blaming." But she said, "every relationship is different" and "not all eight are present all the time." Harrison observed these "power and control dynamics" in the cases she investigated.

Harrison acknowledged that she did not "know anything about the facts of this specific case," and had not reviewed the police reports, jail calls, or photographs. Her testimony was based on her "expertise on domestic violence" cases, not any personal knowledge. On cross-examination, Harrison admitted that she did not have any professional affiliations with domestic violence outside of law enforcement. She also admitted that she had not spoken at any conferences or published any papers regarding domestic violence.

The trial court instructed the jury that Harrison's testimony "about intimate partner battering is not evidence that [Zeasley] committed any of the crimes charged against him." The jury could consider such testimony "only in deciding whether or not [B.M.'s] conduct was consistent with someone who has been abused and in evaluating the believable [*sic*] of her testimony."

5

(CALCRIM No. 850; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1088, fn. 5.)

## DISCUSSION

### *Harrison's testimony*

Zeasley contends the trial court prejudicially erred in allowing Harrison to testify as an expert on domestic violence because she was not qualified to do so. We are not persuaded.

Evidence Code section 1107 expressly authorizes the admission of expert testimony "regarding intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence." (Evid. Code, § 1107, subd. (a).) The offering party must establish the "proper qualifications of the expert witness." (Evid. Code, § 1107, subd. (b).) "A person is qualified to testify as an expert if [they] ha[ve] special knowledge, skill, experience, training, or education sufficient to qualify [them] as an expert on the subject to which [their] testimony relates." (Evid. Code, § 720, subd. (a).) "Whether a [witness] qualifies as an expert in a particular case depends on the facts of that case and the witness'[s] qualifications." (*People v. Sergill* (1982) 138 Cal.App.3d 34, 39.)

A trial court has "considerable latitude in determining" whether a witness has the requisite qualifications and we uphold that determination "unless a manifest abuse of discretion is shown." (*People v. Bloyd* (1987) 43 Cal.3d 333, 357.) A manifest abuse of discretion is shown only if " ' " 'the evidence shows that [the] witness clearly lacks qualification as an expert.' " ' " (*People v. Dowl* (2013) 57 Cal.4th 1079, 1089 (*Dowl*), italics omitted.) " ' "Where a witness has disclosed sufficient knowledge of the subject to entitle [their] opinion to go to the jury, the question of

6

the degree of [their] knowledge goes more to the weight of the evidence than its admissibility." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 322 (*Bolin*).)  The trial court did not abuse its discretion here.

*Ineffective assistance of counsel*

Zeasley failed to object to Harrison's qualifications.  He properly concedes his contention is forfeited.  (*People v. Stevens* (2015) 62 Cal.4th 325, 333; see Evid. Code, § 353, subd. (a).)  But Zeasley raises a claim of ineffective assistance of counsel to avoid forfeiture.  To prevail, Zeasley must demonstrate that counsel's performance was deficient and prejudicial.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–692; *People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*).)  An ineffective assistance claim fails upon a defective showing of either component.  (*People v. Holt* (1997) 15 Cal.4th 619, 703.)  And here, Zeasley cannot establish either component.

Zeasley cannot show that counsel's performance was deficient because such an objection would have been meritless, and there was no manifest abuse of discretion by the trial court in permitting Harrison's testimony.  (*Mickel, supra*, 2 Cal.5th at p. 198.)  Evidence Code section 720 is phrased in the disjunctive "or," allowing the offering party to establish an expert's qualifications through their "special knowledge, skill, experience, training, or education."  Harrison testified about her "experience" investigating more than 700 domestic violence cases during which she interviewed abusers, victims, and first responders.  She also testified about her training, misconceptions about victims of domestic violence, and explained how she observed dynamics in the cycle of violence and power and control wheel play out in the hundreds of cases she investigated.  On this

7

record, we cannot conclude that Harrison "clearly" lacked the qualifications to testify about intimate partner battering. (*Dowl*, *supra*, 57 Cal.4th at p. 1089.)

An expert witness may be qualified through their "experience." (Evid. Code, § 720, subd. (a).) Contrary to Zeasley's contentions, an expert witness need not possess formal education in intimate partner battering, have associated professional affiliations, spoken at conferences, or published papers on the topic to qualify as an expert under Evidence Code section 1107. (See *People v. McAlpin* (1991) 53 Cal.3d 1289, 1298–1302 [police officer expert testimony on delayed reporting of child sexual abuse]; *People v. Gonzalez* (2006) 38 Cal.4th 932, 944–946 [police sergeant expert testimony on gang culture]; *People v. Cruz* (1968) 260 Cal.App.2d 55, 58–59 [police sergeant expert testimony on evidence of drug use].)

Here, Harrison possessed the requisite experience to testify as an expert regarding intimate partner battering. To the extent Zeasley contends that Harrison's qualifications are underwhelming, those criticisms go to the weight of her testimony, not admissibility. (*Bolin*, *supra*, 18 Cal.4th at p. 322.) Defense counsel did not ignore the issue of Harrison's qualifications but focused his cross-examination on the limits of her education and training. As the trial court instructed, judging the credibility and believability of expert witness testimony was for the jury to decide. And the jury was instructed they were not required to accept Harrison's testimony.

Nor can Zeasley show prejudice. Harrison admitted that she had no personal knowledge about the case, and the trial court properly instructed the jury that Harrison's testimony was not evidence that Zeasley committed any of the crimes. And

8

prejudice was not shown because the evidence establishing counts 1 through 9 and 11 was overwhelming. (*People v. Hines* (1997) 15 Cal.4th 997, 1030.) This evidence included B.M.'s testimony, the testimony of her friend who witnessed the attack, the recordings of Zeasley's telephone calls, and the evidence of prior incidents of domestic violence (Evid. Code, § 1109). In our view, there is no reasonable probability that Zeasley would have obtained a "more favorable" result if Harrison's testimony had not been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

DISPOSITION

The judgment is affirmed. The clerk of the superior court shall correct the abstract of judgment to show that count 11 is a conviction of subdivision (a)(2) of section 136.1, and forward a copy to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

9

Brian E. Hill and Jean Dandona, Judges

Superior Court County of Santa Barbara

_____

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Deepti Vaadyala and Stephen Svetich, Deputy Attorneys General, for Plaintiff and Respondent.